[No. B041735. Second Dist., Div. Three. Jan. 25, 1991.]

WILLIAM S. HART UNION HIGH SCHOOL DISTRICT et al., Plaintiffs and Appellants, v.
REGIONAL PLANNING COMMISSION OF THE COUNTY OF LOS ANGELES et al., Defendants and Respondents;
SHAPELL/MONTEVERDE PARTNERSHIP et al., Real Parties in Interest and Respondents.

1614

**COUNSEL**

Bowie, Arneson, Kadi & Dixon, Terry E. Dixon and Wendy H. Wiles for Plaintiffs and Appellants.

Parker & Covert, Clayton H. Parker and Jonathan J. Mott as Amici Curiae on behalf of Plaintiffs and Appellants.

De Witt W. Clinton, County Counsel, Charles J. Moore and Richard D. Weiss, Deputy County Counsel, Hill, Farrer & Burrill, Darlene Fischer Phillips and Dean E. Dennis for Defendants and Respondents.

Ross & Scott, William D. Ross and Richard H. Loomis for Real Parties in Interest and Respondents.

**OPINION**

**CROSKEY, J.**—By their petition filed in this action, appellants, the William S. Hart Union High School District and the Saugus Union School District (referred to hereinafter collectively as the school districts), seek to stop the development of land which lies within the County of Los Angeles because they believe they have insufficient school facilities to accommodate the projected number of students which the development will bring to their schools. The respondent county agencies and the proponents of the development project demurrered to the petition and their demurrers were sustained without leave to amend. As we find that the County of Los Angeles is not limited by the 1986 school facilities legislation (hereafter 1986 School Facilities Legislation)[1] in the exercise of its legislative authority to approve or deny proposed zoning changes, we will conclude that the school districts should be given the opportunity to allege that the county, when it approved the zoning change involved here, did so under the erroneous belief that such action was required by state law. We therefore reverse the trial court's order of dismissal and remand the cause for further proceedings.

---

[1] See footnote 5, *post.*

STATEMENT OF THE ALLEGED FACTS

1. *The Respondents*

■■■■ According to the petition filed in this action by the school districts,[2] respondent Regional Planning Commission of the County of Los Angeles (the planning commission) is the planning and advisory agency for the County of Los Angeles (the County) and is responsible in part for (1) approving, conditionally approving or denying applications for development and (2) determining that proposed development conforms to stated policies of the County's general plan and applicable specific plans.

Respondent Los Angeles County Planning Director (the planning director) is the director of the County's planning department and is responsible for making preliminary recommendations on development applications. Respondent board of supervisors (the board of supervisors or the board) is the governing body of the County and is responsible for hearing appeals and reviewing decisions of the planning commission and for making final determinations on development projects.

2. *The Real Parties in Interest*

Real parties in interest, Shapell/Monteverde Partnership, Shapell Industries, Inc., and Monteverde Development Company, Inc. (real parties), are developers who are owners of real property (the subject property) in an area of the County known as the Santa Clarita Valley, in the Sand Canyon Zoned District. Real parties submitted applications to the planning commission and the board of supervisors for development of their property. They seek to use it for development of residential dwellings.

3. *The County's General Plan*

The County's 1980 (current) general plan includes a development monitoring system (DMS). The DMS sets forth specific mandatory guidelines which must be followed before the planning director, the planning commission and the board of supervisors can approve development projects that are within urban expansion areas, such as the Santa Clarita Valley. Inclusion of

---

[2] This case is before us from a demurrer sustained without leave to amend. A demurrer admits all material facts which are properly pleaded in the complaint or petition, but not contentions and deductions or conclusions of fact or law. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Further, when reviewing a demurrer, the court assumes that the plaintiff can prove all of the facts which he or she has alleged. (*Fundin* v. *Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955 [199 Cal.Rptr. 789].)

the DMS in the County's general plan is the result of a lawsuit (case No. C366464) filed in 1985 which had challenged the sufficiency of the general plan as it existed at the time of that lawsuit. Since real parties' property is within the Santa Clarita Valley, development of it is governed by the mandatory guidelines set out in the DMS.

### 4. *The County's Approval of Real Parties' Proposed Development*

In 1987 real parties filed an application (the application) for approval of a conditional use permit, zone changes, a local plan amendment, a development agreement and a tentative subdivision tract map for the subject property. Collectively, these authorizations would enable real parties to develop the subject property. The planning director and the planning commission prepared DMS reports for that application. Those reports acknowledged that school classroom supply was not adequate and that there was a potential significant impact on the school districts from the proposed development.

A hearing on real parties' application was set and school districts submitted written opposition. School districts argued that approval of the development applications would violate the DMS and would be inconsistent with the County's general plan because adequate infrastructure was not available to serve the development, and mitigation measures had not been imposed, as required by the DMS. The commission held a hearing on the matter. At that time, the commission directed its staff to prepare findings and conditions. Later, the commission approved the application, subject to real parties' acceptance of certain conditions imposed on the subject property.

School districts appealed the approval and hearings were held before the board of supervisors on that appeal. The board rendered a preliminary order to approve the application and instructed county counsel to prepare findings and conditions for final approval and adoption by the board. Later, the board adopted the findings and approved the application.

According to the school districts' petition, respondents acted arbitrarily, capriciously and in abuse of their discretion by approving real parties' application. School districts allege that the approval violates the County's general plan which, through its DMS, requires the planning commission and the board of supervisors to make findings, which are supported by substantial evidence, that (1) the proposed development conforms to established criteria and methodology for infrastructure, access and environment, and (2) the development is consistent with policies set forth in the DMS.

According to school districts, there is no substantial evidence to support those findings which were in fact made by respondents.

In addition, the planning commission and the board are required (*by the general plan and the DMS*) to deny approval of a development project if mitigation measures are not sufficient to overcome the adverse impact on school facilities that a proposed development will bring. The petition alleges that even though respondents acknowledged that school facilities are inadequate to meet the needs of the proposed development, they have not required adequate mitigation measures as a condition of their approval. School districts further allege that respondents had a duty to follow the procedures set forth in the DMS and to only approve developments that are consistent with the general plan. The school districts allege that respondents' actions violate the requirements of the court order in case No. C366464.

Lastly, school districts allege that the planning commission and the board of supervisors have taken the position that the DMS requirements for adequate infrastructure are no longer applicable to school facilities because those requirements have been preempted by certain Government Code sections.[3] The planning commission and board take the position that these sections preempt any further action by them and prohibit them from specifically following the procedures set forth in the DMS.[4]

### PROCEDURAL BACKGROUND

The petition filed by the school districts is for a writ of mandate (the petition cites Code Civ. Proc., §§ 1085 & 1094.5) and injunctive and declaratory relief. By their petition, school districts sought to have the trial court compel the board to set aside its approval of the development project and to take no further action relating to approval until real parties comply with the requirements of the DMS and the board finds that the project is consistent with the general plan and the decision in case No. C366464.

The respondents filed a general demurrer to the petition, as did the real parties. In their demurrer real parties contended that the 1986 School Facilities Legislation,[5] specifically section 65995, subdivision (e), (previously

---

[3] Unless otherwise indicated, all statutory references herein are to the Government Code.

[4] As discussed *post,* with respect to the issues which are now raised by school districts on appeal, school districts no longer contest the preemptive effect which sections 65995 and 65996 have on the DMS mitigation requirements. Portions of section 65995 are set out at footnotes 6 and 7, *post.* Section 65996 is set out at footnote 10, *post.*

[5] The School Facilities Legislation was enacted by Statutes 1986, chapters 886-889, pages 3057-3095. Of specific interest here are sections 53080, 65995 and 65996. They address the

labeled subd. (d)), *preempted* the mitigation conditions which the school districts alleged should have been imposed;[6] real parties contended that the Legislature has mandated by section 65995 that only certain developer fees are allowed to be levied by the legislative body of a local agency against a development project for the construction or reconstruction of school facilities.[7] Likewise in their demurrer, respondents argued that certain DMS provisions conflict with state law (i.e., §§ 65995 & 65996) and therefore are not applicable to the board's approval of the development plan.[8]

The demurrers were sustained without leave to amend. The trial court's minute order states: "To the extent that lack of school facilities is or becomes an element in a determination that 'infrastructures' is [*sic*] inadequate to accomodate [*sic*] the proposed development, no imaginative characterization of that phenomenon can avoid the state's preemption of the field under Government Code § 65995. That section clearly defines the limits on *all* development requirements to mitigate or avoid that problem. Nor do 'other mitigating' measures amount to more than funding or dedication requirements when substantively analyzed."

The school districts filed a motion for reconsideration. At oral argument on their motion, they contended that *Mira Development Corp.* v. *City of San Diego* (1988) 205 Cal.App.3d 1201 [252 Cal.Rptr. 825], gives the County the right to, in effect, deny a development project by denying zoning changes that the project needs, because legislative decisions such as zoning are not prohibited by the language in sections 65995 and 65996. Counsel for the school districts argued that based on advice from county counsel, the County had taken the position that even with respect to zoning decisions, the County could not deny development applications because it no longer had that discretion since the passage of the 1986 School Facilities Legisla-

---

types of mitigation requirements that the legislative body of a local agency can impose against a development project in order to alleviate the projected adverse impact that the project will have on school facilities.

[6] Section 65995, subdivision (e) provides: "The Legislature finds and declares that the subject of the financing of school facilities with development fees is a matter of statewide concern. For this reason the Legislature hereby occupies the subject matter of mandatory development fees and other development requirements for school facilities finance to the exclusion of all local measures on the subject."

[7] Section 65995, subdivision (a) provides: "Except for a fee, charge, dedication, or other requirement authorized under Section 53080, or pursuant to Chapter 4.7 (commencing with Section 65970), no fee, charge, dedication, or other requirement shall be levied by the legislative body of a local agency against a development project, as defined in Section 53080, for the construction or reconstruction of school facilities."

In the case of residential development, subdivision (b) of section 65995 provides that such a fee is strictly limited to $1.50 per square foot of assessable space.

[8] See footnote 4, *ante*.

tion. School districts requested leave to amend their petition to include allegations (1) that the County's decision to approve the development project was based on county counsel's advice and (2) under *Mira*, that advice was erroneous.

Although the minute order for the hearing on school districts' motion states that the motion was denied, it appears that the court actually reconsidered its previous order but declined to change it. The minute order for the hearing on the motion states in part: *"Mira Development Corporation* v. *City of San Diego*, 205 CA3d 1201 is inapposite. Essentially, the issue here remains simply the limit of the permitted exactions from developers of amounts to provide school facilities. Respondents were fully aware of their prerogatives in ruling upon the requisite permits, zoning, etc."[9] An order of dismissal was filed February 27, 1989, and school districts filed a timely appeal.

## ISSUES PRESENTED

On appeal, school districts have pared down the number of objections which they initially asserted with respect to respondents' approval of the various applications made by real parties in connection with the proposed development. Now, the school districts no longer dispute that the types of mitigation requirements (including exactions) which can be imposed upon a developer to alleviate the development project's harmful impact on school facilities are preempted by the 1986 School Facilities Legislation, (specifically sections 65995, subdivision (e) and section 65996). Thus, they concede that the mitigation requirements set out in the DMS of the County's general plan are invalid if they exceed those enumerated in section 65996. This leaves just three issues to be resolved by this appeal.

First, does the 1986 School Facilities Legislation prohibit the County from denying a *zoning change* (as opposed to denying approval of the development project itself) when (1) that denial would be based on inadequacy of school facilities and (2) one of the essential conditions or requirements for the project is the zoning change?

Second, if the 1986 School Facilities Legislation does not prohibit the County from denying that zoning change, should school districts be

---

[9] This wording in the order strongly suggests that the trial court relied, at least in part, upon its determination that the board was not in fact misled. However, that is a factual determination. We have before us a pleading issue and our review of the record does not demonstrate that the school districts have conceded this point. Indeed, the proposed amendment to their pleadings seeks to put this very matter in issue.

permitted to amend their petition to allege that the County's decision to approve real parties' application (including the required zoning changes) was based on misinformation it received from county counsel (i.e., county counsel's legal opinion regarding the impact of sections 65995 and 65996 on real parties' application)?

Third, where the petition alleges that the County has approved a development project despite the fact that its findings regarding that project are not supported by substantial evidence, have not school districts stated a cause of action?

DISCUSSION

1. *Standard of Review*

■ It is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the plaintiff can amend the complaint to cure its defects. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].) To meet his burden of showing abuse of discretion, the plaintiff must show how the complaint can be amended to state a cause of action. (*Ibid.*) However, such a showing need not be made in the trial court so long as it is made to the reviewing court. (Code Civ. Proc., § 472c; *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 939 [101 Cal.Rptr. 568, 496 P.2d 480].)

2. *Impact of the 1986 School Facilities Legislation on a Request for a Zoning Change*

a. *The Mira Decision*

■ School districts contend that despite the language in section 65996 which prohibits a public agency from denying approval of a development project on the basis of the adequacy of school facilities,[10] that agency's

---

[10] Section 65996 provides: "The following provisions shall be the exclusive methods of mitigating environmental effects related to the adequacy of school facilities when considering the approval or the establishment of conditions for the approval of a development project, as defined in Section 53080, pursuant to Division 13 (commencing with Section 21000) of the Public Resources Code:

"(a) Chapter 22 (commencing with Section 17700) of Part 10 of the Education Code.

"(b) Chapter 25 (commencing with Section 17785) of Part 10 of the Education Code.

"(c) Chapter 28 (commencing with Section 17870) of Part 10 of the Education Code.

"(d) Article 2.5 (commencing with Section 39327) of Chapter 3 of Part 23 of the Education Code.

"(e) Section 53080 of the Government Code.

decision on a particular type of application made in connection with development projects—an application for rezoning—may be made on such a basis. School districts cite *Mira Development Corp.* v. *City of San Diego, supra*, 205 Cal.App.3d 1201 for their position.

In *Mira*, the San Diego City Council denied Mira Development Corporation's application to have certain property rezoned. Mira needed the zoning change in order to develop an apartment project. Originally, the project was given an approval by the city's planning department and planning commission because the initial study for the project showed that the only adverse impact from the project would be noise levels associated with the new apartments, which could be abated. The study concluded that the project would not produce a need for new school facilities.

However, the city council ultimately voted against the project's rezoning application after the high school district and various residents in the area objected to the project on the grounds that the schools were already overcrowded. Objections were also voiced that the subject property should be used for a needed park, that there were already sufficient rental units in the area, that traffic would be negatively impacted, and that the area was already dense with residents.

The city council was advised by the city attorney that it should not consider the park issue because doing so might raise the possibility of an inverse condemnation lawsuit; it was further advised that it should not deny rezoning on the basis of the park question. However, the city attorney advised the council that it could properly consider the impact of the development on local schools, traffic and crime because those matters would warrant a rejection of the zoning change even though the new zoning would be consistent with the city's general plan and the community plan. The council denied the rezoning application, stating they were doing so on the basis of the infrastructure problems, and not because the land might be used later for a park.

---

"(f) Chapter 2.5 (commencing with Section 53311) of Division 2 of Title 5 of the Government Code.

"(g) Chapter 4.7 (commencing with Section 65970) of Division 1 of Title 7 of the Government Code.

"*No public agency shall, pursuant to Division 13* (commencing with Section 21000) *of the Public Resources Code or Division 2* (commencing with Section 66410) *of this code, deny approval of a project on the basis of the adequacy of school facilities.*" (Italics added.)

With respect to the last paragraph of section 65996, division 13 of the Public Resources Code is the California Environmental Quality Act (CEQA), and division 2 of the Government Code is the Subdivision Map Act.

The Court of Appeal held that the city council's decision regarding adverse impacts on existing infrastructure was consistent with the city's community plan and general plan which call for coordinating new housing with infrastructure.

The court also held that contrary to Mira Development Corp.'s assertion, section 65996 did not preclude the city from using the overcrowding of schools as a basis for rejecting the rezoning application. The court differentiated between the case-by-case decisions that are involved in the consideration of proposed development projects and the *policymaking* decisions regarding land use which are involved in zoning ordinances. The latter affect all potential development projects. It is these land-use policies which are then applied to examine *specific projects*. The court held that section 65996's rule against denying development projects on the basis of the adequacy of school facilities affected just that and nothing more—development projects.

The *Mira* court relied on *Landi* v. *County of Monterey* (1983) 139 Cal.App.3d 934 [189 Cal.Rptr. 55], which held that a rezoning is not a development project. In *Landi*, the issue was whether an application for rezoning could be deemed to be approved by operation of law under sections 65950 and 65956 because the application had not been approved or denied within one year. Those sections speak specifically to applications for development projects and not to rezoning applications, and the *Landi* court held they are not applicable to the latter.

The *Mira* and *Landi* courts noted that (1) the definition of "development project" applicable in the cases before them[11] addresses projects which involve the issuance of permits for construction or reconstruction, (2) traditionally acts of a city's governing body such as granting variances and conditional use permits and approving tentative subdivision maps are adjudicative in nature, and (3) zoning decisions are legislative in nature, even if

---

[11] At the time *Mira* was decided, section 65996 used the definition of "development project" which is found in section 65928. Currently, section 65996 uses the definition that is found in section 53080, subdivision (a)(2). The definitions are identical except for the deletion of one sentence. The deletion is not relevant here. Indeed, the historical note for the 1989 legislative changes to section 53080 states in part: "Section 34 of Stats. 1989, c. 1209, provides: [¶] 'The Legislature finds and declares that paragraph (2) of subdivision (a) of Section 53080 . . . [is] declaratory of existing law.'" (See Historical Note, 36A West's Ann. Ed. Code (1990 pocket supp.) § 53080, p. 16.)

Section 53080, subdivision (a)(2), defines "development project" as follows: "For purposes of this section, 'development project' means any project undertaken for the purpose of development, and includes a project involving the issuance of a permit for construction or reconstruction, but not a permit to operate."

those decisions involve specific, relatively small parcels of property. (*Mira Development Corp.* v. *City of San Diego, supra,* 205 Cal.App.3d at pp. 1217-1218; *Landi* v. *County of Monterey, supra,* 139 Cal.App.3d at pp. 936-937.) Citing *Arnel Development Co.* v. *City of Costa Mesa* (1980) 28 Cal.3d 511, 522 [169 Cal.Rptr. 904, 620 P.2d 565] and sections 65800 and 65804, *Mira* stated that zoning decisions are afforded more deference than adjudicative decisions made by a governmental agency. (*Mira, supra,* at p. 1218.)

Thus, concluded the *Mira* court, since zoning decisions have traditionally been a separate type of function, the Legislature's use of the term "development project" in section 65996's proscription against withholding approvals because of the inadequacy of school facilities should be construed to mean that the Legislature was only addressing development projects and did not intend to include zoning decisions.[12] The court declined to "broaden the meaning of section 65996 beyond its express terms." (*Mira Development Corp.* v. *City of San Diego, supra,* 205 Cal.App.3d at p. 1218.) It held that the city council was therefore entitled to consider the project's impact on schools when it made its decision on Mira's rezoning application. (*Ibid.*)

We agree with the analysis in *Mira.* ■ The court's reasoning is bolstered by the fact that the Legislature is presumed to have knowledge of California's judicial decisions and to enact and amend statutes with those decisions in mind. (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 727-728 [257 Cal.Rptr. 708, 771 P.2d 406].) Here, the argument can be made in school districts' favor that although the Legislature knew of the *Landi* decision and that court's interpretation (vis-à-vis zoning ordinances) of section 65928's definition of "development project," it still used that same definition (sans one sentence) when it amended section 53080, enacted section 65996, and changed the definitional reference to "development project" in sections 65995 and 65996 so as to refer to section 53080 rather than section 65928. In other words, the Legislature has not seen a need to enact legislation to counter the decision in *Landi* (or *Mira*).

■ Also, as school districts note, the focus of the 1986 School Facilities Legislation was to aid in the balancing of interests when local agencies consider applications to move forward with *development projects*. A fair reading of that legislation as a whole supports the view that the Legislature was concerned about *development projects* and the requirements (financial

---

[12] The *Mira* court acknowledged that from a developer's perspective, a negative zoning decision may have the same impact as a negative decision on a proposed "development project."

and otherwise) that are imposed against them, and *not* about zoning. That analysis includes section 65995, subdivision (e) (formerly subd. (d)).

Respondents argue that *Mira*'s constrictive view of the Legislature's use of the term "development project" in section 65996 is improper. They contend that *Mountain Defense League* v. *Board of Supervisors* (1977) 65 Cal.App.3d 723 [135 Cal.Rptr. 588] and *City of Carmel-by-the-Sea* v. *Board of Supervisors* (1986) 183 Cal.App.3d 229 [227 Cal.Rptr. 899] warrant a broader view of that term. However, although those cases involved a "legislative functions vs. adjudicatory functions" analysis, as did *Mira*, the specific question that was before the *Mira* court (i.e., whether § 65996 prevents consideration of the adequacy of school facilities when deciding on a request for a zoning ordinance change) was not an issue in either *Mountain Defense* or *Carmel*. Rather, the question presented in those cases went to the standard of review to be used by a trial court in determining the propriety of a local agency's granting or denying applications relating to zoning ordinances, amendment of general plans, conditional use permits, and so forth.[13]

The *Mountain Defense* court noted that adopting general plans and zoning ordinances is a legislative function whereas granting or denying zoning variances and conditional use permits are administrative, quasi-judicial acts. (*Mountain Defense League* v. *Board of Supervisors, supra,* 65 Cal.App.3d at p. 728.) The court said: "Generally a legislative function involves the application of a rule in all future cases, whereas quasi-judicial action is the determination of specific rights under existing law with regard to a specific fact situation." (*Id.* at p. 729.) Applying that rule here, a zoning change in the area of the Santa Clarita Valley that is at issue in this case would affect any future attempts to develop in that area, whether that development be the one at issue now, if approved, or another.

In *Carmel*, the court acknowledged that "rezoning of property, even a single parcel, is generally considered to be a quasi-legislative act [citations], subject to review under ordinary mandamus [Code Civ. Proc. § 1085]." (*City of Carmel-by-the-Sea* v. *Board of Supervisors, supra,* 183 Cal.App.3d at

---

[13] If the local agency's action is legislative in nature, then an "arbitrary or capricious" standard is used (Code Civ. Proc. § 1085). If the action taken was quasi-judicial in nature, then either the independent judgment rule (for cases involving fundamental, vested rights) or the substantial evidence test will be used by the trial court (Code Civ. Proc. § 1094.5). (*Mountain Defense League* v. *Board of Supervisors, supra,* 65 Cal.App.3d at pp. 727-728.) However, "Where . . . an agency in two capacities is simultaneously disposing of two legally required functions with but one decision, review of that determination must be by the more stringent standard." (*Id.* at p. 729.)

p. 238.) However, the court also noted that when an agency's decision is charged with failure to comply with CEQA, CEQA itself indicates a section 1094.5 review. (*Ibid*.) Since the City of Carmel had challenged an action by the county board of supervisors on the grounds that CEQA had been violated because no environmental impact report had been prepared, the court found that section 1094.5 provided the required standard of review. Citing *Mountain Defense*, the court also noted that as a general matter, a stricter standard of review in the trial court is applied where an agency's decision involves both judicial and legislative functions. (*Id.* at p. 239.)

Thus, a review of *Mountain Defense* and *Carmel* shows that for our purposes here, those cases do not conflict with or undermine *Mira*'s restrictive application of section 65996.

b. *The Preemption Issue*

Respondents argue that section 65995, subdivision (e)'s statement of preemption regarding the subject of mandatory development fees and other development requirements to secure adequate school facilities makes *Mira* a questionable decision since the *Mira* court did not consider the effect of that preemption when it construed section 65996's proscription against denying applications for development projects on the basis of inadequate school facilities.

However, we believe the Legislature clearly set out in section 65995, subdivision (e) exactly what it intended to preempt—the requirements for school facilities finance that a local agency will impose on a *development project*. That is, the Legislature, in effect, said "*We* will tell you what you can and cannot require of a developer when you are seeking to have him or her mitigate the impact of the development project on school facilities." *Mira*, on the other hand, involved a totally different aspect of future development. *Mira* addressed the question of legislating land-use *policies*, i.e., zoning ordinances. In *Mira*, the San Diego city council simply looked at the area of the city where the developer sought to construct multifamily residence dwelling units and said "This area cannot handle more residents; it already feels the congestion crunch in several ways, including inadequate school facilities, and therefore we will not rezone to allow even more people to move there." This was an appropriate *legislative* decision which was not constrained by the 1986 School Facilities Legislation.

We therefore conclude that the County was not limited by the provisions of the 1986 School Facilities Legislation with respect to its decision to grant

or deny the zoning changes requested by real parties. If the County, based upon erroneous legal advice, believed that it had no choice but to grant such zoning changes, and therefore did not sufficiently consider the impact on school facilities that the proposed zoning changes would have, or what mitigation measures, if any, might be required, then it has not discharged its responsibilities under the DMS and the general plan.

### 3. *The School Districts Should Have the Opportunity to Amend*

Respondents argue that school districts should not be allowed to amend their petition to add allegations regarding the *Mira* decision's impact on the County's decision to grant the rezoning application. Respondents assert that it is irrelevant whether the board of supervisors relied on erroneous legal advice from county counsel regarding section 65996, since state and federal Supreme Court decisions hold that a litigant cannot inquire into what evidence a public official considered and what reasoning process he or she used when reaching a decision that is being challenged. They cite *City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768, 777-779 [122 Cal.Rptr. 543, 537 P.2d 375], *State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 256-258 [115 Cal.Rptr. 497, 524 P.2d 1281], and *United States* v. *Morgan* (1941) 313 U.S. 409 [85 L.Ed. 1429, 61 S.Ct. 999]. While the language of those cases directed that rule to quasi-judicial acts, not legislative acts such as zoning decisions, other courts have held that a legislator's motives and mental processes are likewise not open to discovery. (*County of Los Angeles* v. *Superior Court* (1975) 13 Cal.3d 721, 726-727 [119 Cal.Rptr. 631, 532 P.2d 495]; *Tri County Apartment Assn.* v. *City of Mountain View* (1987) 196 Cal.App.3d 1283, 1292 [242 Cal.Rptr. 438].)

However, we do not believe that any of those cases applies here. The Supreme Court in *Morgan* noted that such scrutiny, if applied to a *judge*, "would be destructive of judicial responsibility" and the court stated that decisions made in quasi-judicial proceedings such as administrative hearings should be accorded the same safeguards. (*United States* v. *Morgan, supra*, 313 U.S. at p. 422 [85 L.Ed. at p. 1435].) The *Morgan* court certainly did not mean to suggest that a reviewing court could not inquire into the *rules of law* that a judge or administrator applies to the facts of a case to make his or her decisions. Thus, the school districts' assertion that the board of supervisors misapplied section 65996 to this case because it did not consider its options under *Mira* is not subject to the *Morgan* rule.

In summary, given the status of the law with respect to the latitude a city or county has in determining whether to grant an application for rezoning, school districts should be permitted to amend their petition to allege (1)

that the board received erroneous legal information from county counsel when it sought advice regarding real parties' application for rezoning and (2) that the board relied upon and applied that misinformation in making its decision.

### 4. The Challenged Findings of Fact

In their petition, school districts allege that respondents' findings are not supported by substantial evidence. However, they have stated no specifics. In their opening brief on appeal, they merely assert that they should be allowed "to replead and more properly show that the findings approved by respondents were not supported by substantial evidence." Thus, it is not clear to this court specifically what findings the school districts are challenging.

■ If those findings concern the rezoning decision, we note that respondents' rezoning determinations were made in their legislative capacity and therefore no findings were required to be made with respect thereto. (*Board of Supervisors* v. *California Highway Commission* (1976) 57 Cal.App.3d 952, 961 [129 Cal.Rptr. 504].)

Findings are required, however, for acts taken by respondents in their adjudicatory capacity (e.g., decisions regarding conditional use permits, tentative tract maps, etc.). (*Board of Supervisors* v. *California Highway Commission, supra,* 57 Cal.App.3d at p. 961.) Thus, if the challenged findings concern the approval of the development project and relate to school overcrowding and mitigation of that overcrowding vis-à-vis the DMS, then challenges to those findings would necessarily be limited because (1) section 65996 sets out the only mitigation measures that respondents could demand of real parties when considering approval of their proposed development project and (2) at the same time, it prohibits respondents from denying the development project on the basis of inadequacy of school facilities. Thus, given those legislative pronouncements, it is of no consequence that the DMS portion of the County's general plan might require *more* of respondents and real parties in connection with the adequacy of school facilities and might require findings supported by substantial evidence to show that this "more" is achieved before a project is given final approval.

Of course, while respondents could not *deny* a development project on the basis of inadequate school facilities, school districts can still challenge the board's decision on the grounds that respondents did not do all they were permitted to do under section 65996 to mitigate the adverse impact

that the proposed project will have on schools. As we have already concluded that school districts should be permitted to amend their petition in other particulars, no reason exists why they should not be allowed to include in such amendment allegations which demonstrate the inadequacy of the board's findings and decision in this regard.

## DISPOSITION

The order of dismissal appealed from is reversed and the cause is remanded for further proceedings consistent with the views expressed herein. The school districts shall recover their costs on appeal.

Danielson, Acting P. J., and Hinz, J., concurred.

Petitions for a rehearing were denied February 22, 1991, and the opinion was modified to read as printed above. The petition of defendants and respondents for review by the Supreme Court was denied May 2, 1991. Panelli, J., and Arabian, J., were of the opinion that the petition should be granted.