[No. E011026. Fourth Dist., Div. Two. Feb. 17, 1993.]

CORONA-NORCO UNIFIED SCHOOL DISTRICT, Plaintiff and
Appellant, v.
CITY OF CORONA et al., Defendants and Respondents;
W. & J. COLE FAMILY TRUST et al., Real Parties in Interest and
Respondents.

[No. E011027. Fourth Dist., Div. Two. Feb. 17, 1993.]

CORONA-NORCO UNIFIED SCHOOL DISTRICT, Plaintiff and
Appellant, v.
CITY OF CORONA et al., Defendants and Respondents.

**COUNSEL**

Parker, Covert & Chidester, Clayton H. Parker, Spencer E. Covert and Jonathan J. Mott for Plaintiff and Appellant.

Best, Best & Krieger, Barton C. Gaut and Brant H. Dveirin for Defendants and Respondents.

Pillsbury Madison & Sutro, Ronald E. Van Buskirk, Walter R. Allan, Robert L. Klotz and David S. Winton for Real Parties in Interest and Respondents.

OPINION

DABNEY, Acting P. J.—In these companion cases, consolidated for appeal, the Corona-Norco Unified School District (District) sought writs of mandate to compel the City of Corona and its city council (collectively, City) to rescind approvals of tentative tract maps for two residential development projects. The District contended the tentative tract maps were inconsistent with the City's general plan and violated the California Environmental Quality Act (CEQA), Public Resources Code section 21000 et seq. The trial court sustained general demurrers to the petitions without leave to amend. On appeal, the District contends the petitions should have survived demurrer because the projects were inconsistent with the City's general plan, and the City's environmental review of the proposed projects was inadequate.

FACTUAL AND PROCEDURAL BACKGROUND

*The Parties.* The District is the public school district responsible for providing public education and school facilities in Corona and adjacent areas.

The City of Corona is the local government entity charged with the planning and zoning of residential, commercial, and industrial development in Corona. The city council is the legislative body of the City of Corona. The City has adopted a general plan for local development.

Real parties in interest W. & J. Cole Family Trust and Janace D. Cole (collectively, Cole) are the owners and developers of a 10-acre tract of undeveloped land in Corona. The City granted approval of a tentative tract map to construct 33 single-family homes on the tract and adopted a mitigated negative declaration as to the project. The District imposed a fee of $1.58 per square foot of new construction for school facilities.[1]

*The Petitions for Writ of Mandate.* In its petitions for writ of mandate, the District contended the City was required to deny approvals of the tentative tract maps because they were inconsistent with the City's general plan. The petitions alleged that the maps had been approved "without appropriate financing mechanisms for required school facilities" and without "incorporat[ing] sufficient terms and conditions to assure that adequate school facilities will be provided."

---

[1]Real parties in interest Rick Hughes, Hughes Development Properties, William and Patricia Stein, and Henson Bush Partnership 1 (collectively, Hughes) are the owners and developers of a 29-acre tract in Corona. The City granted approval of a tentative tract map to construct 55 single-family homes on the tract and adopted a mitigated negative declaration as to the project. The District imposed a fee of $1.58 per square foot of new construction for school facilities. Hughes has not appeared in this appeal.

The general plan provides, among other things, that new residential development must be coordinated with available public infrastructure and services to avoid overburdening public services and facilities. With respect to schools, the general plan recommends a " ' "District Sign-Off or Certification Sheet" that will indicate the adequacy of school operating capacity and other public services prior to city council approval of a final tract map.' "

The District alleged that the District's educational facilities were seriously overcrowded, the District was using year-round schooling and portable classrooms to make maximum use of its facilities, the District was unable to mitigate the adverse effects of the overcrowding, the proposed developments would have an adverse effect on the overcrowded facilities, the proposed developments would result in additional students requiring new classrooms and support facilities, the District lacked financial resources to mitigate the effects of the new development, state law limited developer fees for the District to $1.58 per square foot of new residential construction, each new dwelling unit in the District exacerbated the overcrowding, state funding for new schools was unavailable, no voluntary developer contributions were in place, and the District estimated a shortfall of $400,000 in its capital facilities needs after the development fees were collected for the proposed development.

The petitions also included a cause of action for violation of CEQA. The District alleged the City had failed to: (1) describe the adverse environmental impact of the developments on local school facilities and services; (2) address the cumulative impacts of these and other similar development projects; (3) describe feasible mitigation measures; (4) incorporate all feasible mitigation measures into the conditions of project approvals; (5) consider alternatives that would lessen the impacts; and (6) respond to public comments. The District also alleged the City had adopted findings that were not supported by substantial evidence in the record and which did not "bridge the analytical gap between the raw evidence and the conclusion" to approve the project. Finally, the District alleged the City had failed to adopt a statement of overriding considerations. All of the claimed inadequacies related to the anticipated impacts of the development projects on the provision of school facilities and services.

Cole, Hughes, and the City demurred to the petitions on the ground the petitions failed to state facts sufficient to constitute a cause of action. On the

basis of Government Code[2] sections 65995 and 65996 and *Murrieta Valley Unified School Dist.* v. *County of Riverside* (1991) 228 Cal.App.3d 1212 [279 Cal.Rptr. 421], the trial court sustained demurrers to the petitions without leave to amend.

## DISCUSSION

*Standard of Review.* ▇ When we review the sustaining of a demurrer, we determine whether the complaint alleged facts sufficient to state a cause of action. We accept as true all material facts properly pleaded in the complaint or petition. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) The appellant has the burden to demonstrate how the complaint might be amended to state a cause of action. (*Hendy* v. *Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].) If there is no reasonable possibility the defect can be cured by amendment, the judgment must be affirmed. (*Blank, supra,* at p. 318.)

*Statutory Background.* A complex statutory scheme governs imposition of school facilities fees in connection with development approvals. In 1986, the Legislature enacted school facilities legislation (Stats. 1986, chs. 886-889, pp. 3057-3095) which, among other things, "address[ed] the types of mitigation requirements that the legislative body of a local agency can impose against a development project in order to alleviate the projected adverse impact that the project will have on school facilities." (*William S. Hart Union High School Dist.* v. *Regional Planning Com.* (1991) 226 Cal.App.3d 1612, 1618-1619, fn. 5 [277 Cal.Rptr. 645].) The portions of the school facilities legislation relevant to this appeal include sections 53080, 65995 and 65996. The school facilities legislation preempts inconsistent local enactments. (§ 65995, subd. (e).)[3]

Section 53080, subdivision (a)(1) allows school districts "to levy a fee, charge, dedication, or other requirement against any development project within the boundaries of the district" to fund the construction of school

---

[2]All further statutory references are to the Government Code unless otherwise indicated.
[3]Section 65995, subdivision (e) states, "The Legislature finds and declares that the subject of the financing of school facilities with development fees is a matter of statewide concern. For this reason the Legislature hereby occupies the subject matter of mandatory development fees and other development requirements for school facilities finance to the exclusion of all local measures on the subject."

facilities, "subject to any limitations set forth in Chapter 4.9 (commencing with Section 65995) of Division 1 of Title 7. . . ."[4]

During the relevant period, section 65995, subdivision (a) stated, "Except for a fee, charge, dedication, or other requirement authorized under Section 53080, or pursuant to Chapter 4.7 (commencing with Section 65970), *no fee, charge, dedication, or other requirement shall be levied by the legislative body of a local agency against a development project, as defined in Section 53080, for the construction or reconstruction of school facilities.*" (Italics added.)

Section 65996, subdivision (a) provided, "The following provisions shall be the exclusive methods of mitigating environmental effects related to the adequacy of school facilities when considering the approval or the establishment of conditions for the approval of a development project, as defined in Section 53080, pursuant to [CEQA]:

"(1) Chapter 22 (commencing with Section 17700) of Part 10 of the Education Code [the State School Building Aid Bond Law of 1962].

"(2) Chapter 25 (commencing with Section 17785) of Part 10 of the Education Code [the Emergency School Classroom Law of 1979].

"(3) Chapter 28 (commencing with Section 17870) of Part 10 of the Education Code [the California School Finance Authority Act].

"(4) Article 2.5 (commencing with Section 39327) of Chapter 3 of Part 23 of the Education Code.

"(5) Section 53080 of the Government Code.

"(6) Chapter 2.5 (commencing with Section 53311) of Division 2 of Title 5 of the Government Code [the Mello-Roos Community Facilities Act of 1982].

"(7) Chapter 4.7 (commencing with Section 65970) of Division 1 of Title 7 of the Government Code [the School Facilities Act of 1977]."

Section 65996 also stated, "No public agency shall, pursuant to [CEQA] or [the Subdivision Map Act], deny approval of a project on the basis of the adequacy of school facilities." (§ 65996, subd. (b).)

---

[4]At the time the tentative tract maps were approved, the fees were limited to $1.58 per square foot of new residential construction. (See § 65995, subd. (b).)

*Consistency Doctrine.* Section 66473.5[5] (part of the Subdivision Map Act [§ 66410 et seq.]) requires approvals of tentative maps to be consistent with the general plan. (See also § 66474.)[6] ■ The District argues the City should have denied the tentative tract map approvals because the tentative tracts were inconsistent with the general plan.

However, as noted above, section 65996 precludes a local agency from denying approval of a development project under CEQA or the Subdivision Map Act on the basis of inadequate school facilities.

On their faces, both sections 66473.5 and 65996 appear to govern this case. However, section 65996 (forbidding denial of a development project on the basis of inadequate school facilities) would lead to a result directly contrary to that indicated by section 66473.5 (requiring denial of a development project unless a finding is made of consistency with the general plan). (3) In determining which provision shall prevail, our task is to determine the intent of the Legislature so as to effectuate the purpose of the law. (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 17-18 [194 Cal.Rptr. 722].)

First, we note that section 66473.5 was adopted in 1974 and most recently amended in 1983. Section 65996 was enacted in 1986 and most recently amended in 1989. ■ When the provisions of one statute are in irreconcilable conflict with those of another, the later enactment is deemed to have repealed any contrary provisions in the former. (*Santa Barbara Federation of Teachers* v. *Santa Barbara High Sch. Dist.* (1977) 76 Cal.App.3d 223, 236 [142 Cal.Rptr. 749].) ■ Under this rule, the later enactment of section 65996 is deemed to have abrogated any contrary language in section 66473.5.

■ Moreover, a specific provision of a code will prevail as against a general provision, regardless of the dates of passage. A special act is considered an exception to the general statute. (*San Francisco Taxpayers Assn.* v. *Board of Supervisors* (1992) 2 Cal.4th 571, 577 [7 Cal.Rptr.2d 245, 828 P.2d 147].)

---

[5]"No local agency shall approve a tentative map, . . . unless the legislative body finds that the proposed subdivision, together with the provisions for its design and improvement, is consistent with the general plan required by Article 5 (commencing with Section 65300) of Chapter 3 of Division 1, . . ." (§ 66473.5.)

[6]"A legislative body of a city or county shall deny approval of a tentative map, . . . if it makes any of the following findings:

"(a) That the proposed map is not consistent with applicable general and specific plans as specified in Section 65451." (§ 66474.)

■     Section 66473.5 deals with a general requirement of consistency between a development and a local general plan. However, section 65996 deals specifically with mitigation of impact on schools from development approvals. Thus, as the more specific statute, section 65996 creates an express exception to the general requirement of consistency. Section 65996 must prevail to the extent it is inconsistent with section 66473.5.

We recognize that the consistency doctrine is "the linchpin of California's land use and development laws; it is the principle which infused the concept of planned growth with the force of law." (*deBottari* v. *City Council* (1985) 171 Cal.App.3d 1204, 1213 [217 Cal.Rptr. 790].) By our holding, we do not mean to diminish the importance of the consistency doctrine in the planning process. However, the Legislature has clearly mandated that development takes precedence to the adequacy of school facilities.

Despite the language of section 65996, the District contends that *William S. Hart Union High School Dist.*, *supra*, 226 Cal.App.3d 1612 supports its position that the consistency doctrine required disapproval of the tentative tract maps. In *Hart*, developers sought a conditional use permit, zone change, local plan amendment, development agreement and subdivision tract map to enable them to develop vacant property. (*Id.*, at p. 1617.) The county approved the project over the objections of the local school district, and the school district sued to reverse the approvals on the ground the project did not comply with the county general plan. The trial court dismissed the complaint after sustaining a demurrer without leave to amend. On appeal, the court reversed, allowing the school district to amend its complaint.

However, *Hart* is distinguishable in that the type of approvals sought in that case included the legislative acts of a zoning amendment and general plan amendment. Courts have consistently held that inadequate school facilities may be the basis for local entities to deny *legislative* action. (*Hart*, *supra*, 226 Cal.App.3d at pp. 1621-1626; see also *Murrieta*, *supra*, 228 Cal.App.3d at pp. 1232-1234; *Mira Development Corp.* v. *City of San Diego* (1988) 205 Cal.App.3d 1201, 1217-1218 [252 Cal.Rptr. 825].)

The *Murrieta* court explained that the sections 53080, 65995, and 65996 refer to "development project[s],"[7] and the court construed this language to refer only to quasi-adjudicatory approvals such as tentative tract map approvals, conditional use permits, and the like. (*Murrieta*, *supra*, 228

---

[7]Section 53080, subdivision (a)(2) states, "For purposes of this section, 'development project' means any project undertaken for the purpose of development, and includes a project

Cal.App.3d at p. 1231.) Approval of a subdivision map is quasi-adjudicatory in nature. (*Arnel Development Co.* v. *City of Costa Mesa* (1980) 28 Cal.3d 511, 518-519 [169 Cal.Rptr. 904, 620 P.2d 565].) Thus, the rationale of *Murrieta, Mira,* and *Hart* does not apply in the present case, when the only action sought was approval of a development project.

*Statutory Basis for Consistency Doctrine.* The District next attempts to avoid the effect of section 65996 by arguing that it applies only to the Subdivision Map Act, and the consistency doctrine has an independent basis in case law. (*Lesher Communications, Inc.* v. *City of Walnut Creek* (1990) 52 Cal.3d 531 [277 Cal.Rptr. 1, 802 P.2d 317]; *deBottari, supra,* 171 Cal.App.3d 1204.) Regardless of the origins of the consistency doctrine, it has been codified as part of the Subdivision Map Act at sections 66473.5 and 66474. (See generally, *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644, 654-655 [150 Cal.Rptr. 242, 586 P2d 556].) We find no support in *Lesher* or *deBottari* for the proposition that the consistency doctrine is a common law rule that imposes a general duty apart from the statutes dealing with the same subject. The District's argument is unavailing.

*Approval of Tentative Tract Map as a Legislative Act.* The District argues that the approval of a tentative tract map, ordinarily a quasi-adjudicatory act, is transformed into a legislative act when it involves the breach of a duty set forth in a legislative enactment such as a general plan. However, the nature of the action, not the duty involved, determines whether an act is adjudicatory or legislative. Every adjudicatory action of a local agency necessarily implements legislative standards such as those expressed in a general plan. The District's position would eliminate the distinction between legislative and adjudicatory acts.

*CEQA.* CEQA requires a public agency to disclose potentially significant environmental effects even if such effects cannot be mitigated. The public agency must perform an initial study of the development project based on adequate information. (*Citizens Assn. for Sensible Development of Bishop Area* v. *County of Inyo* (1985) 172 Cal.App.3d 151 [217 Cal.Rptr. 893].) The agency may approve a project that would produce significant environmental effects if those effects cannot be mitigated, but this can be done only after the completion of an environmental impact report. (See Pub. Resources Code, § 21002.1.) The public agency must make findings about the feasibility of mitigation measures and must make a statement of overriding considerations. The District argues that no such report or findings were prepared in this case.

involving the issuance of a permit for construction or reconstruction, but not a permit to operate." Sections 65995 and 65996 incorporate this definition.

■ The gravamen of the District's CEQA claims is that the City had a duty, in conducting CEQA review, to impose conditions in addition to the section 53080 fee to lessen the alleged impacts of the development projects on local school facilities. This position must fail for the same reason the District's consistency argument fails: the District's position does not acknowledge the strict limitations on local agencies' powers in sections 65995 and 65996.

In *Murrieta*, this court held that a school district could state a cause of action for violation of CEQA when the environmental impact report for development which included a general plan amendment was alleged to be inadequate. (*Murrieta, supra,* 228 Cal.App.3d at p. 1234.) However, the distinction between a legislative act, such as a general plan amendment, and an adjudicatory or administrative act, such as a tentative tract map approval, was critical to the court's analysis of the CEQA issue just as it was to the court's analysis of the consistency issue. Section 65996 explicitly applies to adjudicatory decisions regarding development projects, but not to legislative actions such as general plan amendments. (228 Cal.App.3d at p. 1231.)

In *Hart*, the court explained that section 65995 limits the right to challenge CEQA findings concerning the impact of a development project on school facilities: "[I]f the challenged findings concern the approval of the development project and relate to school overcrowding and mitigation of that overcrowding . . . then challenges to those findings would necessarily be limited because (1) section 65996 sets out the only mitigation measures that respondents could demand of real parties when considering approval of their proposed development project and (2) at the same time, it prohibits respondents from denying the development project on the basis of inadequacy of school facilities." (*Hart, supra,* 226 Cal.App.3d at p. 1628.)

Finally, we note that CEQA is not an independent source of public agency power. (Pub. Resources Code, § 21004.) Even if this court were to return the case for further CEQA analysis, the trial court could not require the City to impose additional mitigation conditions, nor could it require the City to set aside the project on the basis of inadequate mitigation, even if CEQA violations were found. Thus, we conclude the petitions failed to state a cause of action under CEQA.

## DISPOSITION

The judgment is affirmed.

Hollenhorst, J., and McKinster, J., concurred.