Opinion
 

 VOGEL (C. S.), P. J
 

 Introduction
 

 This appeal arises out of an insurance coverage dispute between plaintiff and appellant Continental Insurance Company (Continental) and defendant
 
 *641
 
 and respondent Lexington Insurance Company (Lexington). Continental appeals from a judgment of dismissal entered after a demurrer was sustained without leave to amend to its complaint for equitable indemnity, contribution, and declaratory relief against Lexington. We affirm the judgment.
 

 Factual and Procedural Background
 

 This insurance coverage dispute arose out of a catastrophic, multivehicle traffic accident which occurred in January 1992. The accident was allegedly caused by the driver of a tractor/trailer rig, Inocencio Contreras. Contreras was acting as agent of Southern California Motor Delivery, Inc. (SCMD), the lessee of the tractor/trailer rig. American Presidents Lines, Ltd. (APL) was the lessor of the trailer portion of the rig; Ruan Leasing Company (Ruan) was the lessor of the tractor portion, or “power unit,” of the rig.
 

 Continental issued a liability insurance policy, described in more detail below, to APL. Defendant Planet Insurance Company (Planet) issued a liability insurance policy to Ruan.
 
 [1]
 
 Lexington issued an umbrella liability insurance policy, also described below, to Ruan, in which the Planet insurance policy was specified as underlying insurance.
 

 A settlement of the personal injury and wrongful death lawsuit arising out of the accident was reached, whereby Continental paid $750,000, Planet paid $50,000, and Lexington paid $630,250. The total amount of the settlement was $6,900,500, with other insurers and the State of California contributing as- well.
 

 Following the settlement, Continental filed the present action for equitable indemnity, contribution, and declaratory relief against Planet and Lexington. Lexington responded by filing a general demurrer to Continental’s complaint. Hearing on the demurrer occurred on April 17, 1995, and by minute order dated May 5, 1995, the trial court sustained respondent’s demurrer without leave to amend. The trial court stated in its minute order that “Plaintiff’s policy is properly characterized as one of primary coverage which includes an ‘other insurance’ clause that, under some circumstances, permits the coverage provided to be excess (although also possibly subject to proration). Lexington’s policy is a true umbrella policy, as opposed to a primary or excess policy, and, as such, is not subject to proration with a primary form of policy such as that issued by plaintiff in this case.” Judgment of dismissal was filed May 22, 1995, and notice of entry of judgment was filed May 26, 1995. Notice of appeal from the judgment of dismissal was timely filed June 12, 1995, and this appeal ensued.
 

 
 *642
 
 Discussion
 

 We note that in this appeal, we are called upon to determine the proper interpretation of statutes and their application to undisputed facts, as well as to determine the proper interpretation of insurance policies. These matters are subject to our independent review.
 
 (International Engine Parts, Inc.
 
 v.
 
 Feddersen & Co.
 
 (1995) 9 Cal.4th 606, 611 [38 Cal.Rptr.2d 150, 888 P.2d 1279];
 
 Alex Robertson Co.
 
 v.
 
 Imperial Casualty & Indemnity Co.
 
 (1992) 8 Cal.App.4th 338, 343 [10 Cal.Rptr.2d 165].)
 

 Insurance Code Sections 11580.8 and 11580.9
 

 Insurance Code sections 11580.8 and 11580.9
 
 [2]
 
 were enacted for the purpose of resolving, so far as possible, conflicts and litigation over which of two or more applicable policies providing automobile liability insurance are to be deemed primary or excess. The statute, where applicable, makes a definitive imposition of primary and/or excess liability on insurers in given situations.
 
 (Hartford Accident & Indemnity Co.
 
 v.
 
 Sequoia Ins. Co.
 
 (1989) 211 Cal.App.3d 1285, 1296-1297 [260 Cal.Rptr. 190].) We therefore turn first to a consideration of whether the statutory provisions are applicable.
 

 Section 11580.8 provides as follows: “The Legislature declares it to be the public policy of this state to avoid so far as possible conflicts and litigation, with resulting court congestion, between and among injured parties, insureds, and insurers concerning which, among various policies of liability insurance and the various coverages therein, are responsible as primary, excess, or sole coverage, and to what extent, under the circumstances of any given event involving death or injury to persons or property caused by the operation or use of a motor vehicle. [*][] The Legislature further declares it to be the public policy of this state that Section 11580.9 of the Insurance Code expresses the total public policy of this state respecting the order in which two or more of such liability insurance policies covering the same loss shall apply . . . .”
 

 The parties argue that subdivision (b) of section 11580.9 is potentially applicable. It provides that “Where two or more policies apply to the same loss, and one policy affords coverage to a named insured engaged in the business of renting or leasing motor vehicles without operators, it shall be conclusively presumed that the insurance afforded by that policy to a person other than the named insured or his or her agent or employee, shall be excess over and not concurrent with, any other valid and collectible insurance applicable to the same loss covering the person as a named insured or as an
 
 *643
 
 additional insured .... The presumption provided by this subdivision shall apply only if, at the time of the loss, the involved motor vehicle . . . : (1) Qualifies as a ‘commercial vehicle’ as that term is used in Section 260 of the Vehicle Code.”
 

 We find, however, that subdivision (b) of section 11580.9 is not applicable. It provides for the ordering of coverage only as between policies such as those issued by Continental and Lexington to named insureds in the business of leasing motor vehicles without operators (such as APL and Ruan), which policies afford coverage to persons other than the named insureds (in this case SCMD and Contreras), on the one hand, and on the other hand, policies (in this case apparently issued by Generalli and Providence/Washington) covering the persons (SCMD and Contreras) as named or additional insureds. Subdivision (b) does not address the ordering of coverage as between two policies whose named insureds are engaged in the business of leasing motor vehicles without operators, which policies afford coverage to persons other than the named insured.
 

 Appellant also urges the potential applicability of section 11580.9, subdivision (d), which provides that “Except as provided in subdivisions (a), (b), and (c), where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.” Appellant argues that the applicability of subdivision (d) cannot be determined at the pleading stage, and that discovery is required to determine whether the Lexington policy describes or rates as an owned automobile the motor vehicle involved in the underlying accident, particularly since the Lexington policy is incomplete.
 

 Appellant argues that “[p]age 3 of the Lexington policy and form ‘LEXOOCC-UMB-1T (ed. 12/90)’ are missing from the Lexington policy. (See gap regarding p. 3 between 2 C.T. pp. 161-162). Also, policy form LEXC-CUMBS is missing from the Lexington policy.” However, it is clear that only page 3 of the policy is missing. Form “LEX-OCC-UMB-1T,” dated “12/90,” is in fact the basic insuring agreement, set forth at pages 160 to 170 of the clerk’s transcript, from which page 3 is missing. The “LEXCCUMBS” form, also titled “SCH of UNDERLYING INS-OCC UMB,” dated “6/89,” appears on page 159 of the clerk’s transcript. A review of the policy does not indicate, and appellant does not specifically contend, that any other portion of the policy is missing.
 

 As only page 3, which obviously contains definitions relating to terms used in the policy, is missing, we can conclude that the policy does not
 
 *644
 
 describe or rate as an owned automobile the motor vehicle involved in the underlying accident, or any other motor vehicle. Instead, the policy affords coverage to
 
 “persons
 
 insured,” defined at pages 4 and 5 of the policy, which includes permissive users of autos owned by the insured or hired for use on the insured’s behalf. (Italics added.) (See
 
 Hartford Accident & Indemnity Co.
 
 v.
 
 Sequoia Ins. Co., supra,
 
 211 Cal.App.3d at p. 1301 [“. . . the Hartford Umbrella policy is a general umbrella liability policy insuring the persons insured for all types of ‘bodily injury, personal injury, property damage and advertising liability’ subject to certain exclusions. ... In other words, the Hartford Umbrella policy does not insure any automobiles at all. It insures people, including those who permissibly use ‘owned’ automobiles”].) As such, it is evident, and we conclude as a matter of law based on our interpretation of the policy at issue, that section 11580.9, subdivision (d), does not apply. The trial court did not err in sustaining respondent’s demurrer in this regard, because discovery was not necessary to definitively determine the inapplicability of the Insurance Code provisions.
 

 Interpretation of the Limits of Liability Provisions of the Lexington Policy
 

 Appellant contends that respondent Lexington’s policy contains competing and contradictory statements of the limits of liability provided thereunder, and that the limits of liability statement in the declarations page of the policy controls and supersedes the limits of liability statement in the body of the policy. As a result, appellant argues, Lexington’s policy should be considered excess insurance as to the underlying insurance specified in the schedule (the Planet policy), but not as to any other underlying insurance.
 

 The declarations page of the Lexington policy contains the following provision: “The limit of the Company’s liability shall be as stated herein subject to all the terms of this policy having reference thereto (A) $5,000,000 Single Limit any one occurrence Personal Injury or Property Damage or Advertising Liability or any combination thereof in excess of (1) the amount covered, whether or not collectible, under the underlying insurance as set out in the attached Schedule, or (2) a Self Insured Retention of $10,000 ultimate net loss in respect of each occurrence not covered by said underlying insurance.”
 

 Within the policy is the following provision: “HI. Limits of Liability [tJ0 A. Retained Limit [H 1. We will be liable only for that portion of the ultimate net loss in excess of the Insured’s Retained Limit, defined as either: [<][] a. the total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance, whether or not collectible, and the
 
 *645
 
 applicable limits of any other underlying insurance providing coverage to the Insured; or [f] b. the amount stated in the Declarations as Self Insured Retention as a result of any one occurrence not covered by any such underlying policies
 
 or other insurance,
 
 and then up to an amount not exceeding the amount as stated in the Declarations as the result of any one occurrence.” (Italics added, boldface emphasis in original.)
 

 We disagree with appellant’s contention that the two provisions are in conflict and that the limits of liability statement in the declarations page supersedes the other. Our conclusion is based on the fact that the limits of liability statement on the declarations page specifically states that “[t]he limit of the Company’s liability shall be as stated herein
 
 subject to all the terms of this policy having reference
 
 thereto.” (Italics added.) Thus, the limit of liability as stated in the declarations page is subject to the limit of liability provision in the body of the policy, which indicates that Lexington will be liable for the ultimate net loss in excess of “the total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance, whether or not collectible,” and further adds “and the applicable limits of any other underlying insurance providing coverage to the Insured.” The correct interpretation of the Lexington policy is that it provides excess insurance over the applicable limits of the underlying policies listed in the attached schedule, as well as over the applicable limits of any other underlying insurance.
 

 Resolution of the Ordering of Coverage
 

 The Continental policy at issue provided to APL and related entities commercial auto coverage and trailer interchange coverage. Within the policy is the following provision: “Other Insurance—Primary and Excess Insurance Provisions HQ a. This Coverage Form’s Liability Coverage is primary for any covered ‘auto’ while hired or borrowed by you and used exclusively in your business as a ‘trucker’ and pursuant to operating rights granted to you by a public authority. This Coverage Form’s Liability Coverage is excess over any other collectible insurance for any covered ‘auto’ while hired or borrowed from you by another ‘trucker.’ However, while a covered ‘auto’ which is a ‘trailer’ is connected to a power unit, this Coverage Form’s Liability Coverage is: [^Q (1) On the same basis, primary or excess, as for the power unit if the power unit is a covered ‘auto.’ [H (2) Excess if the power unit is not a covered ‘auto.’ ”
 

 As previously noted, the trailer portion of the tractor/trailer rig involved in this accident was owned by APL and was a covered auto under the Continental policy, and the tractor portion, or power unit, of the rig was owned by
 
 *646
 
 Rúan, and was not a covered auto as defined in the Continental policy. Therefore, under the terms of the Continental policy, its coverage is excess over any other collectible insurance under the circumstances of the accident involved here. As discussed above, the Lexington policy also provided excess insurance over the applicable limits of any other underlying insurance.
 

 Appellant contends, “since the trial court sustained Lexington’s demurrer without leave to amend,” that for purposes of this appeal we must assume that the Planet policy did not provide permissive user coverage, presumably with the effect that the Lexington policy therefore dropped down and provided primary coverage for SCMD and Contreras as permissive users of Ruan’s tractor. We disagree.
 

 Appellant specifically alleges in its complaint that the Planet policy, “which includes an MCS-90 Endorsement,” provides coverage to Rúan, as well as to permissive users of the tractor involved here, including Contreras. In reviewing the sustaining of a demurrer, we determine whether the complaint alleged facts sufficient to state a cause of action, and accept as true all material facts properly pleaded in plaintiff’s complaint.
 
 (CoronaNorco Unified Sch. Dist.
 
 v.
 
 City of Corona
 
 (1993) 13 Cal.App.4th 1577, 1582 [17 Cal.Rptr.2d 236].) Even if appellant were given leave to amend its complaint, it would not be allowed to amend the complaint to state a fact directly contradictory to one stated previously. “[A] plaintiff may not discard factual allegations of a prior complaint, or avoid them by contradictory averments, in a superseding, amended pleading.”
 
 (California Dental Assn.
 
 v.
 
 California Dental Hygienists’ Assn.
 
 (1990) 222 Cal.App.3d 49, 53, fn. 1 [271 Cal.Rptr. 410], citing 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§1117-1118, pp. 533-536.) Thus, contrary to appellant’s assertion, we must assume for purposes of this appeal that the Planet policy did provide permissive user coverage.
 

 We are therefore called upon to determine whether an umbrella policy, providing only excess insurance for the occurrence involved here, must prorate or otherwise contribute concurrently with a primary policy which, by operation of a contingency clause, in essence becomes an excess policy. In doing so, we are mindful of the basic rule that in interpreting policies of insurance, “[t]he policy will be viewed in light of its general objects and purposes.”
 
 (Otter
 
 v.
 
 General Ins. Co.
 
 (1973) 34 Cal.App.3d 940, 949 [109 Cal.Rptr. 831].)
 

 The parties have not cited and we have not found there to be any California authority directly on point. However, we find persuasive the
 
 *647
 
 statement made and the reasoning reflected in Ostrager and Newman, Handbook on Insurance Coverage Disputes (8th ed. 1995) section 11.03[e], pages 516-517, cited by respondent: “It has been held that a general or umbrella/catastrophe policy should properly be considered as excess to a specific or straight excess policy as well as to a primary policy which, as a result of a contingency clause, is converted into an excess policy. [Citations.]
 
 m
 
 Underlying these decisions is the principle that when resolving conflicts between co-insurers: [U [A] functional analysis [should be applied] to separate lines of insurance, and an insurance policy should be read in light of the role it is to play. [Citation.] [<][] Where an umbrella policy is involved, a leading commentator has written: [f] [U]mbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage, excess provisions arising in any manner, or escape clauses. 8A Appleman, Insurance Law and Practice § 4909.85, at 453-54 (1981).”
 

 The general object and purpose of the Lexington policy was to provide excess coverage over and above all other underlying insurance, while the general object and purpose of the Continental policy was to provide primary insurance. This situation is clearly distinguishable from one in which two primary policies or two umbrella policies covering a loss each state that their coverage is excess to any other insurance, in which case courts force the insurers to prorate despite the policy language. (See
 
 CSE Ins. Group
 
 v.
 
 Northbrook Property & Casualty Co.
 
 (1994) 23 Cal.App.4th 1839, 1842 [29 Cal.Rptr.2d 120], and cases cited therein.)
 

 We hold that, under the circumstances presented here, the umbrella policy issued by Lexington should be considered as excess to the primary policy issued by Continental which, as a result of a contingency clause, was converted into an excess policy. The trial court properly sustained respondent’s demurrer without leave to amend.
 

 Disposition
 

 The judgment is affirmed.
 

 Baron, J., and Aranda, J.,
 
 *
 
 concurred.
 

 [1]
 

 Planet is not a party to this appeal.
 

 [2]
 

 All further statutory references are to the Insurance Code, unless otherwise indicated.
 

 *
 

 Judge of the Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.