21 Cal.Rptr.3d 60 (2004)
124 Cal.App.4th 27
WILSHIRE INSURANCE COMPANY, INC., Plaintiff and Respondent,
v.
SENTRY SELECT INSURANCE COMPANY et al., Defendants and Appellants.
No. G033136.
Court of Appeal, Fourth District, Division Three.
November 15, 2004.
Wilson, Kenna & Borys, Garth Goldberg, Los Angeles, and Paal H. Bakstad for Defendants and Appellants.
McNulty & Saacke and Charles F. Saacke, Torrance, for Plaintiff and Respondent.

OPINION
IKOLA, J.
On cross-motions for summary judgment, the court applied Insurance Code, section 11580.9, subdivision (d),[1] and declared Wilshire Insurance Company, Inc. (Wilshire) entitled to contribution from Sentry Select Insurance Company (Sentry)[2] *61 in the amount of one-half the expenses incurred by Wilshire in defending and settling a wrongful death action. Sentry appeals the judgment arguing the statute does not apply to the stipulated facts, but if it does, it was misapplied. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Because the parties based their respective motions for summary judgment on a joint statement of stipulated facts, we confine our summary of the facts to the matters contained in their stipulation, including the exhibits.

The Accident and the Underlying Litigation
In July 1999, Ken Holm, dba Kenway Enterprises (Kenway), was driving a 1989 Kenworth tractor (the tractor) hauling a 1981 Great Dane semi-trailer (the trailer) when the tractor-trailer rig was involved in an accident causing bodily injury and death. A wrongful death action was filed in the Orange County Superior Court against, inter alia, Kenway (the owner of the tractor) and Statewide Transportation (the owner of the trailer) (Statewide). At the time of the loss, Wilshire insured Kenway; Sentry insured Statewide. Wilshire made a timely demand that Sentry share in the investigative expenses, legal fees, and indemnity, but Sentry refused to contribute. Wilshire thereupon undertook the defense of both Kenway and Statewide, reserving its right to seek a pro rata contribution from Sentry. After expending $5,635.96 in investigative expenses, and $38,298.65 in attorney fees, Wilshire settled all claims made in the litigation against Kenway and Statewide by paying $210,000 on their behalf. The parties agree these amounts were reasonable and necessary to settle the action.

The Tractor Lease
At the time of the accident, Kenway was hauling Statewide's trailer under the terms of a written agreement by which Statewide had leased the tractor from Kenway. Under the terms of the lease, Kenway also provided a driver for the leased tractor. As germane to arguments made on this appeal, the lease agreement also required Kenway "to fully indemnify [Statewide] for damage to property or person of a third party resulting from fire, theft, collision, or upset and to fully indemnify [Statewide] for damage to cargo arising from any or all of these same causes." In other words, when Statewide hired Kenway's tractor and driver to haul the Statewide load, it did so with the understanding that Kenway would bear the risk of liability to a third party.

The Insurance Policies
To protect itself against the risk of liability assumed under these and similar circumstances, Kenway had purchased an insurance policy from Wilshire. The Wilshire insurance policy covered Kenway for the subject accident with a policy limit of $1 million. Statewide had purchased its own insurance policy from Sentry that, inter alia, insured any driver hauling a Statewide trailer with Statewide's permission. Thus, the Sentry insurance policy also covered the subject accident and it *62 also had a policy limit of $1 million. Kenway's tractor was scheduled as an owned vehicle on the Wilshire insurance policy, and Statewide's trailer was scheduled as an owned vehicle on the Sentry insurance policy.
The Wilshire policy provided liability coverage for damages resulting from the use of the owned vehicles specifically described in the policy (such as the tractor). But it also provided liability coverage for damages resulting from the use of any nonowned trailer (such as the Statewide trailer) attached to any power unit specifically described in the policy declarations (such as the tractor).[3] Further, the Wilshire policy's "other insurance" clause states that Wilshire's liability coverage would be primary where a covered vehicle (the tractor) is hired by another (Statewide) and a written agreement with the other motor carrier as lessee (Statewide) requires Kenway to hold the lessee harmless.[4] Finally, under the terms of the Wilshire policy, if a covered trailer is connected to a covered tractor, the liability coverage for the trailer is also primary where coverage for the tractor is primary.[5]
The Sentry policy provides liability coverage for damages resulting from use of the trailer, but no provision of this policy covers liability resulting from the use of Kenway's tractor.[6] The Sentry policy's "other insurance" clause states the coverage is primary if the covered trailer is hired or borrowed by Statewide (which was not the case), and excess if the trailer is hired or borrowed from Statewide (also not the case). But where the covered trailer is connected to a power unit that is not covered under the policy, the coverage for liability resulting from use of the trailer is excess.[7] The operator of the tractor *63 is nevertheless an "insured" because the trailer is being used with the permission of the owner.[8] Thus, the Sentry policy, by its terms, provides liability coverage for the accident, but the coverage is excess.

The Court's Ruling
The court granted Wilshire's motion for summary judgment and denied Sentry's motion, stating: "It may not be the most equitable result in view of the circumstances of this case, but I just think I've got to apply 11580.9(d), and I think that dictates my ruling. [¶] I think if it weren't for the application of that code section, [Sentry's] argument would be much more persuasive." The court no doubt was troubled making a decision that, under compulsion of a statute, ignored the entirely consistent provisions of the "other insurance" clauses in the respective insurance policies and arrived at a result at odds with those provisions. After all, Wilshire had agreed to provide primary coverage. Sentry had agreed to provide only excess coverage. Yet, in the trial court's view, section 11580.9, subdivision (d), required Wilshire and Sentry to share the loss equally as co-primary insurers.
While we recognize the same anomaly, we nevertheless agree with the trial court and affirm the judgment. Section 11580.9, subdivision (d), provides a bright-line rule applicable to these circumstances, and the court correctly applied the statute.

DISCUSSION
Because the case was presented on summary judgment motions with stipulated facts, we conduct a de novo review to decide a pure question of law. (Oliver & Williams Elevator Corp. v. State Bd. of Equalization (1975) 48 Cal.App.3d 890, 894, 122 Cal.Rptr. 249 [trial on stipulated facts presents issue of law]; Hersant v. Department of Social Services (1997) 57 Cal.App.4th 997, 1001, 67 Cal.Rptr.2d 483 [summary judgment subject to de novo review on appeal].)
In 1970, the Legislature declared "it to be the public policy of this state to avoid so far as possible conflicts and litigation, with resulting court congestion, between and among injured parties, insureds, and insurers concerning which, among various policies of liability insurance and the various coverages therein, are responsible as primary, excess, or sole coverage." (§ 11580.8.) To achieve this goal, "The Legislature further declare[d] it to be the public policy of this state that Section 11580.9 of the Insurance Code expresses the total public policy of this state respecting the order in which two or more of such liability insurance policies covering the same loss shall apply." (Ibid.)
Section 11580.9 identifies four different circumstances under which two or more policies of automobile or motor vehicle insurance may afford liability insurance applicable to the same loss. As to each of these defined circumstances, the statute states a rule, in the form of a conclusive presumption, by which to determine that policy which provides primary coverage and that policy which provides excess coverage. (§ 11580.9, subds.(a), (b), (c) & (d).) The parties agree three of the scenarios under section 11580.9 do not apply. Wilshire contends, however, that section 11580.9, subdivision (d) applies, and the application of subdivision (d) to the agreed facts results in Wilshire and Sentry both providing primary coverage. Sentry contends section 11580.9, subdivision (d) *64 does not apply because, if construed as Wilshire contends, the conclusion that the policies are co-primary does not "order" the policies as contemplated by the statute. Sentry then looks to the "other insurance" clauses of the respective policies to argue its policy was not primary, but excess. Alternatively, Sentry contends the statute should be interpreted under these facts to make Wilshire's policy primary and Sentry's policy excess.
We begin our analysis with the words of the statute. Section 11580.9, subdivision (d) states: "[W]here two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess." The parties agree: Both the Wilshire and Sentry policies afforded valid and collectible liability insurance. However, other elements of section 11580.9, subdivision (d), require further discussion.

The Tractor-Trailer Rig Was a Single Motor Vehicle
At least for purposes of section 11580.9, subdivision (d), it is well established that a truck-tractor hauling a trailer is treated as a single motor vehicle. On first impression in California, Mission Ins. Co. v. Hartford Ins. Co. (1984) 155 Cal. App.3d 1199, 202 Cal.Rptr. 635 (Mission) adopted the rationale used in a number of federal diversity cases that had previously addressed the issue, and held a tractor-trailer rig to be a single motor vehicle for purposes of section 11580.9, subdivision (d). "`[V]irtually every jurisdiction which has addressed the question has held that an accident involving a tractor-trailer unit "arises out of" the use of both, regardless of which part of the unit was actually involved in the accident. [Citations.] [¶] `The theory seems to be that a trailer is of no use without a tractor, and vice versa. [Citation.] But for the need to haul the trailer, the tractor would not have traveled the highway and been involved in the accident.'" (Mission, at p. 1212, 202 Cal. Rptr. 635.) "`Where a truck and towed trailer are involved in an accident, the courts are well-advised to avoid the metaphysics and hold that the accident arose out of the use of each.'" (Id. at p. 1213, 202 Cal.Rptr. 635.)
Later, Transport Indemnity Co. v. Royal Ins. Co. (1987) 189 Cal.App.3d 250, 234 Cal.Rptr. 516 (Transport Indemnity), held: "[T]he phrase `motor vehicle or vehicles' in section 11580.9, subdivision (d), simply means one or more motor vehicles." (Id. at p. 255, 234 Cal.Rptr. 516.) But Transport Indemnity also agreed with the holding of the Mission court that "an accident which involves a truck tractor/trailer rig should be viewed as arising out of the use of all components of the rig." (Ibid.) Thus, as in Mission, the Transport Indemnity court held the insurance policies covering the tractor and the trailer respectively both applied to the "same motor vehicle." (Ibid.)
Accordingly, by the rationale explained in the Mission and Transport Indemnity decisions, we also conclude the Wilshire and Sentry polices applied to the "same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise." (§ 11580.9, subd. (d).) The only remaining task is to identify the equipment "described or rated as an owned automobile" by the respective insurance policies. (Ibid.)

*65 Each Policy Describes or Rates Its Insured's Equipment as "Owned"  Wilshire Describes or Rates the Tractor and Sentry Describes or Rates the Trailer

Section 11580.9, subdivision (d), instructs: "[T]he insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary." (Italics added.) In Ohio Cas. Ins. Co. v. Aetna Ins. Co. (1978) 85 Cal.App.3d 521, 524, 149 Cal.Rptr. 562, the court held: a "description or rating ... in commonsense understanding, means a particularization of the vehicle." (Italics added.) Here, in the parties' joint statement of facts they agree: In the Wilshire policy, the tractor was "scheduled as an owned vehicle"; in the Sentry policy, the trailer was "scheduled as an owned vehicle." Thus, since the tractor-trailer rig is treated as a single vehicle, under section 11580.9, subdivision (d), it is "conclusively presumed" that each insurance policy is primary. Because each policy has the same limit for bodily injury liability, each insurer has an equal obligation to contribute to the loss.

Sentry's Arguments Have Equitable Appeal, but Cannot Overcome the Plain Terms of the Statute
Sentry argues section 11580.9 cannot apply because coprimary coverage does not establish an order of priority. In Sentry's view, the purpose of section 11580.9 is to determine "the order in which two or more ... liability insurance policies covering the same loss shall apply" (§ 11580.8), and the word "order" means one policy must be primary and the other excess. We disagree. We find nothing in the statute prohibiting a result by which the "order" in which the policies apply is concurrent, or making the statute inapplicable merely because its application results in an equal ranking of priority. Indeed, without phrasing its conclusion in these terms, the Mission court held under similar circumstances that two insurance policies were "ordered" concurrently, i.e., they were co-primary. Whether section 11580.9, subdivision (d) applies to an occurrence depends upon the existence of the simply stated condition. Do two or more insurance policies cover the same motor vehicle in "an occurrence out of which a liability loss shall arise?" If the answer is "yes," the statute applies. If the answer is "no," the statute does not apply. But in no case does the result of the statute's application determine whether it applies. Which is to say, we will not adopt an interpretation of the statute based upon our like or dislike of the outcome of its application.
Sentry also contends that because the "other insurance" clauses afforded by the two policies were entirely congruent under the agreed facts  Wilshire promised its insured it would provide primary coverage for use of both the tractor and trailer, but Sentry promised its insured it would only provide excess coverage for use of the trailer  both the tractor and trailer should be treated as "described or rated as owned" under the Wilshire policy. But the priority of coverage as contracted for in the policies must not be confused with the "description or rating" of the vehicles, which determines the priority of coverage under section 11580.9 without regard to the priority provisions of the respective policies. The Legislature's conclusive presumption regarding the priority of coverage may not be avoided by unilaterally imposing "other insurance" clauses the other insurer has not bargained for. A desire to minimize or eliminate litigation over competing provisions of "other insurance" clauses in multiple policies was the impetus for enactment of the legislation. And even though the "other insurance" clauses do not compete in this case, the statute cannot be ignored.
Insurers dissatisfied with the operation of section 11580.9 may overcome its conclusive *66 presumptions, although the process may be cumbersome. Section 11580.9, subdivision (f) provides: "The presumptions stated in subdivisions (a) to (d), inclusive, may be modified or amended only by written agreement signed by all insurers who have issued a policy or policies applicable to a loss described in these subdivisions and all named insureds under these polices." (Italics added.) Of course, there was no such agreement in this case.[9]
Thus, we are compelled to conclude that section 11580.9, subdivision (d) controls, and its application results in the Wilshire and Sentry policies both providing primary coverage. With equal policy limits, equal sharing of the loss is proper.
We recognize the seeming inequity of this result. Wilshire agreed to provide primary coverage. Sentry agreed to provide only excess coverage. Wilshire will suffer only half the loss it promised to bear and Sentry will pay half of a loss it never promised to bear. Yet the Legislature believed a bright-line rule in these circumstances was beneficial. The inequity, if any, lies in the operation of a statute we are powerless to rewrite.

DISPOSITION
The judgment is affirmed. Wilshire shall recover its costs on appeal.
WE CONCUR: BEDSWORTH, Acting P.J., and ARONSON, J.
NOTES
[1] All further statutory references are to the Insurance Code unless otherwise stated.
[2] Plaintiff named John Deere Insurance Company as the defendant, but the parties stipulated that Sentry Select Insurance Company and John Deere Select Insurance Company are the same entity, and the correct legal entity for purposes of this case is Sentry Select Insurance Company. Our caption for this opinion, and our discussion of the facts, refers to defendant as Sentry Select Insurance Company in accordance with the parties' stipulation.
[3] Section I, paragraph (A) of the Wilshire policy describes the "autos" covered by the policy as, "Only those `autos' described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any `trailers' you don't own while attached to any power unit described in ITEM THREE)." The tractor was scheduled in item three of the declarations. Section VI, paragraph (B) defines "auto" as "a land motor vehicle, `trailer,' or semi-trailer designed for travel on public roads."
[4] Section V, paragraph (B)(5)(a)(1) of the Wilshire policy provides as follows. "While any covered `auto' is hired or borrowed from you by another `motor carrier,' this Coverage Form's liability coverage is: [¶] (1) Primary if a written agreement between you as the lessor and the other `motor carrier' as the lessee requires you to hold the lessee harmless."
[5] Section V, paragraph (B)(5)(c)(1) of the Wilshire policy states: "While a covered `auto' which is a `trailer' is connected to a power unit, this Coverage Form's Liability Coverage is: [¶] (1) Provided on the same basis, either primary or excess, as the liability coverage provided for the power unit if the power unit is a covered `auto.'"
[6] Section I, paragraph (A) of the Sentry policy, like the Wilshire policy, covers "Only those `autos' described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any `trailers' you don't own while attached to any power unit described in ITEM THREE)." The Kenway tractor is, of course, not described in item three of the Sentry policy, and the coverage for a nonowned trailer attached to a tractor owned by Statewide is not applicable under the instant facts.
[7] Section V, paragraph (B)(5)(a) of the Sentry policy states as follows: "This Coverage Form's Liability Coverage is primary for any covered `auto' while hired or borrowed by you and used exclusively in your business as a `trucker' and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered `auto' while hired or borrowed from you by another `trucker'. However, while a covered `auto' which is a `trailer' is connected to a power unit, this Coverage Form's Liability Coverage is: [¶] (1) On the same basis, primary or excess, as for the power unit if the power unit is a covered `auto'. [¶] (2) Excess if the power unit is not a covered `auto.'"
[8] Section II, paragraph (A)(1) of the Sentry policy defines an "insured," inter alia, as "Anyone else while using with your permission a covered `auto' you own, hire or borrow except [inapplicable exceptions]."
[9] Wilshire contended at oral argument in the court below, and again on appeal, that an owner of a trailer, such as Statewide, may purchase a "trucker's endorsement" which eliminates all coverage when the trailer is towed by another, thereby relying entirely on the insurance provided by the owner of the tractor. Sentry contends that if such a unilateral endorsement is effective to eliminate all coverage, by the same token the language of its "other insurance" clause must also be given effect to limit its coverage to that of an excess insurer. Because the agreed facts do not contain any information about the availability or the terms of such an endorsement, and because no such endorsement existed in the instant dispute, we do not address these arguments.