Opinion
THE COURT.*
State Farm Mutual Automobile Insurance Company, appellant, and Progressive Marathon Insurance Company, respondent, filed cross-summary-judgment motions on stipulated facts concerning the parties’ respective obligations under automobile liability insurance policies. The trial court granted summary judgment to Progressive. The appeal presents purely a question of law, namely, whether Insurance Code section 11580.9, subdivision (d) governs the parties’ allocation of responsibility for uninsured motorist coverage. We conclude that, xyhile the statute does encompass uninsured motorist coverage, the trial court correctly ruled it did not apply in this case, and we affirm.
FACTS
Julie Deam was injured when a Volkswagen Jetta in which she was riding was hit by an uninsured motorist (UM). The Jetta, ownéd by Tanya Schafer and driven with Ms. Schafer’s permission by Melissa Jaime, was insured under an automobile liability policy issued by respondent, Progressive Marathon Insurance Company. The policy provided coverage to passengers like Ms. Deam who were injured as a result of the operation of an uninsured motor vehicle.*
[1] Progressive’s UM policy limits are $15,000/$30,000.
Ms. Deam was also covered by the UM clause of a State Farm policy covering a Toyota pickup owned by. her parents. She qualified as an “insured” because she was a relative living in her parents’ household. State Farm’s UM policy limits are $25,000/$50,000.
The two insurers agreed to settle Ms. Deam’s claim for $9,800. Progressive paid $3,626 and State Farm paid $6,174, representing their pro rata shares of the settlement amount based on their respective policy limits.
*Supp. 5 State Farm, having reserved the right to seek reimbursement from Progressive, then filed a complaint for equitable contribution and indemnity. The complaint alleged Insurance Code section 11580.9, subdivision (d) should apply to make Progressive’s UM coverage primary and State Farm’s excess. Since Ms. Deam’s loss fell within Progressive’s policy limits, Progressive should have borne the entire loss and State Farm should be reimbursed for the amount it paid on Ms. Deam’s claim.
Insurance Code section 11580.9, subdivision (d) reads in pertinent part: “[W]here two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.” (Italics added.)
State Farm reasoned as follows: The injury was sustained in the Jetta, which is described as an “owned” vehicle only by Progressive’s policy. Therefore, Progressive’s coverage was primary. Progressive countered that the statute was inapplicable for three reasons: First, it refers to “liability” insurance, which does not include UM coverage. Second, UM coverage does not pertain to a “liability loss.” And finally, the two insurance policies in this case did not both “apply to” the Jetta.[2]
In granting summary judgment to Progressive, the trial court noted the issue was one of first impression, and encouraged State Farm to appeal. It has done so.
DISCUSSION
Because this case was decided on summary judgment motions with stipulated facts, we are presented with a pure question of law and our review is de novo. (Wilshire Ins. Co., Inc. v. Sentry Select Ins. Co. (2004) 124 Cal.App.4th 27, 33 [21 Cal.Rptr.3d 60].) We consider the following three subissues: First, does the term “liability insurance” in section 11580.9 encompass UM coverage? Second, is a loss caused by the actions of an uninsured motorist a “liability loss”? And finally, do the two policies apply to the same vehicle? These are issues of statutory and contract interpretation, which are questions of law subject to independent review. (Continental Ins. Co. v. Lexington Ins. Co. (1997) 55 Cal.App.4th 637, 642 [64 Cal.Rptr.2d 116]; see also Catalina Investments, Inc. v. Jones (2002) 98 Cal.App.4th 1, 6 *Supp. 6 [119 Cal.Rptr.2d 256]; Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co. (1996) 45 Cal.App.4th 1, 35 [52 Cal.Rptr.2d 690].)

Liability insurance includes uninsured motorist coverage

In 1970, the Legislature enacted Insurance Code sections 11580.8 and 11580.9.[3] Section 11580.8 “declares it to be the public policy of this state' to avoid so far as possible conflicts and litigation, with resulting court congestion, between and among injured parties, insureds, and insurers concerning which; among various policies of liability insurance and the various coverages therein, are responsible as primary, excess, or sole coverage ....” Section 11580.8 also declares that section 11580.9 “expresses the total public policy of this' state respecting the order in which two or more of such liability insurance policies covering the same loss shall apply . . . .”
Progressive argues UM coverage is not within the scope of “liability insurance” as used in section 11580.9 because UM coverage is first person— not third person—coverage. We disagree.
“Liability insurance” is defined in Insurance Code section 108, which is located in division 1—“General Rules Governing Insurance.” It states in pertinent part:
“Liability insurance includes:
“(a) Insurance against loss resulting from liability for injury, fatal or nonfatal, suffered by any natural person, or resulting from liability for damage to property, or property interests of others but does not include worker’s compensation, common carrier liability, boiler and machinery, or team and vehicle insurance.
“(b)(1) With respect to, operations or property covered by .a policy of liability insurance as defined in subdivision (a), insurance of medical, hospital, ■ surgical and funeral loss or expense of the insured or other persons injured, and in the case of an automobile liability policy disability benefits to the insured or other persons injured and in the event of their death, funeral and accidental death benefits to their dependents, beneficiaries or personal representatives irrespective of .legal liability of the insured, when issued with or supplemental to the insurance defined in subdivision (a);
“(2) When issued with or supplemental to the insurance defined in subdivision (a), disability insurance covering the insured and members of his *Supp. 7 household, or other persons who customarily operate any automobile covered by such a policy and who are named in such policy; and such disability insurance may cover against accidental injury, death or dismemberment caused by any or all hazards as defined in such coverage;
“(c) Insurance covering injuries sustained by an insured resulting from a tort committed by a third party against which such third party is not himself covered by liability insurance.” {Ibid.) .
Although subdivision (c) of section 108 does not use the term “uninsured motorist coverage” this is the type of insurance coverage it describes. The purpose of UM insurance is to allow an insured to recover sums the insured “shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle.” (§, 11580.2, subd. (a)(1).) Typically one is “legally entitled to recover” only when the owner or operator of the uninsured vehicle is liable in tort. (Cf. § 108, subd. (c).)
The language of both insurance policies brings their UM coverage within the “liability” definition of section 108. Progressive’s policy states in pertinent part: “[W]e will pay for damages . . . which an insured person is entitled to recover from the owner or operator of an uninsured motor vehicle . . . because of bodily injury: 1. sustained by an insured person; 2. caused by accident; and 3. arising out of the ownership, maintenance or use of an uninsured motor vehicle . . . .”
Similarly, the State Farm policy states: “We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be sustained by an insured and caused by accident resulting out of the operation, maintenance or use of an uninsured motor vehicle.”
The State Farm policy continues: “Deciding Fault and Amount Under Coverage U. Two questions must be decided by agreement between the insured and us: 1. Is the insured legally entitled to collect damages from the owrier or driver of the uninsured motor vehicle; and 2. If so, in what amount.”
Moreover, in another section of the Insurance Code, the Legislature explicitly defines automobile liability insurance as including UM coverage. Section 660 states, “As used in this chapter: H] . . . [f] (b) ‘Automobile liability coverage’ includes only coverage of bodily injury and property damage liability, medical payments, and uninsured motorists coverage.” {Id., subd. (b).) Although section 660 by its terms applies only to Insurance Code chapter 10 (relating to cancellation of contracts), the statute nevertheless shows the Legislature is consistent in including UM coverage under its *Supp. 8 definition of “liability insurance.” We find no good reason to conclude the Legislature meant to exclude UM coverage from the concept of liability insurance in section 11580.9.

Is a loss caused by an uninsured motorist a “liability loss”?

Having concluded that liability insurance includes UM coverage, we must next determine whether a loss caused by an uninsured motorist is a “liability loss” under section 11580.9. In interpreting statutes, we must determine legislative intent. In doing so, we first examine the words of the statute, since they are the best indicator of intent. (People v. Oganesyan (1999) 70 Cal.App.4th 1178, 1182 [83 Cal.Rptr.2d 157], citing Freedom Newspapers, Inc. v. Orange County Employees Retirement System (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218].) Our first step in determining the Legislature’s intent is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. (Mercer v. Department of Motor Vehicles (1991) 53 Cal.3d 753, 763 [280 Cal.Rptr. 745, 809 P.2d 404].) Of course the commonsense meaning will not prevail if it is obviously contrary to the legislative purpose. (Oganesyan, supra, at p. 1182.)
As noted above, the Insurance Code defines “liability insurance” to include UM coverage. (§ 108.) Such coverage “require[s] reimbursement to the insured by his own carrier of the type of loss which would have been covered by an automobile liability policy had the uninsured motorist been in fact insured.” (Farmers Ins. Exchange v. Hansel (1970) 12 Cal.App.3d 570, 573 [90 Cal.Rptr. 654].) Since an insurer pays UM coverage only when an uninsured motorist is liable for damage to the insured, payments under that coverage are “liability loss[es].” (§ 11580.9, subd. (d).)
In interpreting statutes, we must also read them with reference to' the entire scheme of law of which they are a part, so that the entire statutory scheme may be harmonized and rendered effective. (Calatayud v. State of California (1998) 18 Cal.4th 1057, 1065 [77 Cal.Rptr.2d 202, 959 P.2d 360].) In addition, we must respect the policies the Legislature seeks to implement. (People v. Navarro (1972) 7 Cal.3d 248, 273 [102 Cal.Rptr. 137, 497 P.2d 481].) Section 11580.8, which is part of the same statutory scheme as section 11580.9, expresses legislative policy concerning allocation of responsibility for liability coverage. It states:
“The Legislature declares it to be the public policy of this state to avoid so far as possible conflicts and litigation, with resulting court congestion, between and among injured parties, insureds, and insurers concerning which, among various policies of liability insurance and the various coverages therein, are responsible as primary, excess, or sole coverage, and to what *Supp. 9 extent, under the circumstances of any given event involving death or injury to persons or property caused by the operation or use of a motor vehicle.
“The Legislature further declares it to be the public policy of this state that Section 11580.9 of the Insurance Code expresses the total public policy of this state respecting the order in which two or more of such liability insurance policies covering the same loss shall apply, and such public policy is not to be changed or modified by any provision of the Vehicle Code except in those express cases where the requirements of Article 2 (commencing with Section 16450) of Chapter 3 of Division 7 of the Vehicle Code apply with regard to a policy of liability insurance certified as provided in Section 16431 of the Vehicle Code.” (§ 11580.8, italics added.)
We agree with State Farm that by interpreting “liability loss” to include UM coverage, we inject more certainty into section 11580.9, thereby promoting 11580.8’s stated legislative goal of “avoid[ing] so far as possible conflicts and litigation, with resulting court congestion, between and among injured parties, insureds, and insurers concerning which, among various policies of liability insurance and the various coverages therein . . . .” Such an interpretation allows a court to allocate responsibility for UM coverage by applying the statute, rather than by forcing the parties into protracted litigation.
Although no California court has considered whether section 11580.9, subdivision (d) includes UM coverage, the Arizona Court of Appeals analyzed nearly identical language in one of its statutes. (See Nationwide Mut. Ins. v. CNA Ins. Co. (Ct.App. 1988) 159 Ariz. 368 [767 P.2d 716].) The Arizona statute read in pertinent part: “If two or more policies affording valid and collectible automobile liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise . . . .” (Ariz. Rev. Stat. former § 28-1170.01.A.)
Like Progressive, Nationwide argued the Arizona Legislature could not have intended for this language to include first person UM coverage, because a “liability loss” encompasses only sums an insurer must pay to third persons on account of its insured’s acts. In analyzing the question, the court noted that Arizona requires automobile liability policies to include uninsured motorist coverage. (Nationwide Mut. Ins. v. CNA Ins. Co., supra, 767 P.2d at pp. 718-719, citing Ariz. Rev. Stat. § 20-259.01.A.) It then reasoned nothing in section 28-1170.01 suggested “liability insurance,” as used in that section, was intended to have a narrower meaning than the meaning required by section 20-259.01.A, or that the priorities established by that subsection did not apply to all types of coverage. (Nationwide, supra, at p. 719.)
*Supp. 10 We are of course not bound by a decision of a sister state. (Mary M. v. City of Los Angeles (1991) 54 Cal.3d 202, 243 [285 Cal.Rptr. 99, 814 P.2d 1341].) However, we likewise find that California legislative policy, particularly as set forth in section 11580.8, weighs in favor of finding that “liability loss” includes UM coverage.
Our conclusion finds support in a Court of Appeal case that assumed, without deciding, that “liability loss” under section 11580.9, subdivision (d) is not limited to first person liability coverage. (See Hellman v. Great American Ins. Co. (1977) 66 Cal.App.3d 298 [136 Cal.Rptr. 24].) Heilman involved á dispute between insurance companies as to their .responsibility for medicai payment coverage. In analyzing the policy term “ ‘valid and collectible insurance,’ ” Heilman cited section 11580.9, subdivision (d), which also uses the term “valid and collectible,” stating, “[t]his section, which applies to aliability loss, is also applicable to medical reimbursement provisions contained in automobile liability policies.” ' (Heilman, supra, at pp. 304-305.)[4] While this comment was not necessary to the decision and therefore is dictum, it expresses the Court of Appeal’s view that section 11580.9 is not restricted to third person liability claims.
Progressive counters that if section 11580.9 is read to include UM coverage, the statute would then conflict with section 11580.2, á more specific and comprehensive statute concerning UM coverage. In matters of statutory construction, we must respect any restrictions the Legislature has inserted, and must find that “ ‘[a] specific provision relating- to a particular subject will govern a general provision, even though the general provision standing alone would be broad enough to, include the subject to which the specific provision relates.’ ” (Schachter v. Citigroup, Inc., (2005) 126 Cal.App.4th 726, 738 [23 Cal.Rptr.3d 920].)
Section 11580.2, subdivision (a)(1) prohibits the issuance of any “bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle” unless the policy contains UM coverage (although the statute also permits the parties to agree to exclude such coverage). Subdivision (c)(2) of section 11580.2 states UM coverage “does not apply either as primary or as excess coverage: [][]... [][] (2) To bodily injury of the insured while in or upon or while entering into or alighting from a motor vehicle other than the described motor vehicle if the owner thereof has insurance similar to that provided in this section.”
Section 11580.2, subdivision (d) states, “Subject to paragraph (2) of subdivision (c), the policy . . . may provide that if the insured has insurance *Supp. 11 available to the insured under more than one uninsured motorist coverage provision, any damages shall not be deemed to exceed the higher of the applicable limits of the respective coverages, and the damages shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits.” (§ 11580.2.)
Progressive contends if we find section 11580.9, subdivision (d) controls which of multiple policies providing UM coverage is deemed primary, then we will be negating an insurer’s right under section 11580.2 to provide for a ceiling on the limits of its UM coverage and for prorating its coverage with that of other insurers. We disagree. As discussed below, section 11580.9 controls only if two policies “apply to the same motor vehicle.” Such is not always the case. Indeed, as discussed below, it is not the case here. When section 11580.9 does not apply, if the insurers have included the optional policy language permitted by section 11580.2, subdivision (d), then such language will be given effect. (Prieto v. State Farm Mut. Automobile Ins. Co. (1969) 268 Cal.App.2d 891, 893 [74 Cal.Rptr. 472].)

Do both policies “apply to” the same motor vehicle?

Even if section 11580.9, subdivision (d) could be read to include UM coverage, the statute is triggered only when two policies “ ‘apply to the same motor vehicle.’ ” (Scottsdale Ins. Co. v. State Farm Mutual Automobile Ins. Co. (2005) 130 Cal.App.4th 890, 902-903 [30 Cal.Rptr.3d 606].) Progressive argues that, here, only its policy “applies to” the Jetta, and the State Farm policy does not.
State Farm argues its policy does “apply to” the Jetta as a “non-owned” car, and supports this contention with language from the medical payments section of the policy. The section reads in pertinent part:
“We will pay medical expenses for bodily injury sustained by:
“1. a. The first person named in the declarations [that is, Robert J. Deam];
“b. his or her spouse [that is, Linda Deam]; and
“c. their relatives [that is, Julie Deam].
“These persons must have sustained the bodily injury:
“a. While they operate or occupy a vehicle covered under the liability section; or
*Supp. 12 “b. Through being struck as a pedestrian by a motor vehicle or trailer.” (Italics added.)
“Non-owned cars” may qualify as “vehicles covered” under the liability section, but only when “used” by the named policyholders, their relatives, or nonrelatives with consent. “ ‘[U]se’ ” includes only “operating, maintaining, loading, or unloading a motor vehicle.” (§ 11580.06, subd. (g).) Here, the Jetta was not being “used” by any insured under the State Farm policy and was not a “covered vehicle” under the liability section.
Since this case involves UM coverage, we analyze whether the UM coverage “applies” to the Jetta. By statute, UM coverage must be provided to a named insured or relatives living in the named insured’s household, if they are injured “while occupants of a motor vehicle or otherwise.'” (§ 11580.2, subd. (b), italics added.) These persons are covered for injuries caused by an uninsured motorist without reference to an insured automobile “or possibly, any motor vehicle.” (Daun v. USAA Casualty Ins. Co. (2005) 125 Cal.App.4th 599, 607 [23 Cal.Rptr.3d 44], citing Lopez v. State Farm Fire & Cas. Co. (1967) 250 Cal.App.2d 210, 212 [58 Cal.Rptr. 243] [holding UM coverage had to be provided to an insured who was on foot when injured by an uninsured motor vehicle].) The coverage must be provided “regardless of whether the individual is in a motor vehicle or on a horse, motorcycle, bicycle or stilts when injured by an uninsured or underinsured motorist.” (Daun, supra, at p. 610.)
The State Farm policy provides the type of coverage required by statute and by case law, that is, it covers Ms. Deam, as an insured, “for bodily injury [she] is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be sustained by an insured and caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.”
Under the terms of the policy, Ms. Deam’s occupancy of the Jetta was incidental to State Farm’s obligations toward her. Those obligations were triggered solely because she was injured by a motorist who was driving an uninsured vehicle.
We conclude the State Farm uninsured motorist coverage does not “apply to” the Jetta. Therefore, subdivision (d) of section 11580.9 does not operate to allocate payments between the two insurers.
CONCLUSION AND DISPOSITION
The policies provided for proration of UM coverage, and the insurers paid their pro rata amount. Section 11580.9 did not apply to make Progressive’s *Supp. 13 coverage primary. Therefore, State Farm was not entitled to contribution from Progressive and the court correctly granted summary judgment to Progressive. The judgment is affirmed. Each party to bear its own costs on appeal.

Mary P. Fuller, Acting Presiding Judge of the Appellate Division; Marsha Slough, Judge of the Appellate Division. The parties have stipulated to having this case heard and decided by a two-judge panel.

 This opinion will refer to such coverage as UM coverage.

 The parties agree that, if this code section does not apply, they are required to prorate their respective shares of Ms. Deam’s loss.

 All statutory references are to the Insurance Code unless otherwise indicated.

 The issue in Hellman was the interpretation of “ ‘valid and collectible’ ” as used in an insurance policy. (Hellman v. Great American Ins. Co., supra, 66 Cal.App.3d at pp. 304—305.)