Filed 8/20/14  Certified for publication 9/17/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SCOTTSDALE INDEMNITY COMPANY, | C071416 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201000083168CUICGDS) |
| v. | |
| NATIONAL CONTINENTAL INSURANCE COMPANY, | |
| Defendant and Respondent. | |

In this insurance coverage action, plaintiff Scottsdale Indemnity Company (Scottsdale) and defendant National Continental Insurance Company (NCI) seek this court's determination whether they are coprimary insurers or whether NCI is an excess insurer for an underlying fatality involving a tractor/trailer rig operated by Manuel S. Lainez.  The trial court granted NCI's motion for a summary judgment, concluding that Scottsdale was the primary insurer pursuant to California Insurance Code

1

section 11580.9, subdivisions (d) and (h).[1] We agree that Scottsdale is the primary insurer and NCI is the excess insurer and affirm the judgment.

## FACTS

By January of 2007 Manuel Lainez had been independently driving commercial vehicles for eight and one-half years. He owned his own truck, also known as a power unit or tractor, and his own business, Lainez Trucking. He had his own motor carrier permit and operating authority in the state of California. He purchased a trucker's liability policy from Scottsdale with a $1 million liability limit. The policy specifically described and rated a 1999 Freightliner tractor Lainez had purchased about three years earlier and expressly covered any attached trailer.

Lainz entered into a motor carrier agreement with Western Transportation Services (Western Transport), a nonasset-based corporation that contracts exclusively with owner/operators and arranges for them to pick up and deliver loads to various customers in California and Nevada. It does not own tractors or trailers, but contracts with owner/operators or drivers. The agreement provided that Lainez was an independent contractor and was responsible for all costs and expenses incidental to the performance of transportation services. He agreed to maintain liability insurance and to name Western Transport as an additional insured.

Western Transport, through the California Automobile Assigned Risk Plan (CAARP), purchased a commercial assigned risk policy from NCI. The policy stated, " 'Named Insured's Business: 1 Trucker for Hire-Excess' " and named Lainez as a driver. It did not list, describe, or rate any vehicle. It was rated on an excess cost of hire basis at a premium that was 4 to 10 percent of the cost of a policy rated on a primary cost of hire basis.

---

[1] All further statutory references are to the Insurance Code unless otherwise designated.

Both policies were in effect on January 10, 2007, when Lainez, hauling goods for Western Transport in his 1999 Freightliner tractor with an attached 1984 Hyundai 53-foot box trailer, was involved in a fatal collision with Constancio Acayayan Barcenas. Barcenas's wife and children filed various wrongful death actions. On February 6, 2008, NCI tendered the defense of Western Transport to Scottsdale. Scottsdale accepted the defense and indemnification, and the representative handling the claim stated, "Scottsdale's coverage would be primary and that Western Transport's policy with NCI was excess to the Scottsdale policy and would not have to make any payment unless the judgment or settlement exceeded the limits of the Scottsdale policy." Scottsdale exclusively handled the defense of both Lainez and Western Transport and did not tender the defense of either defendant to NCI.

Two years later Scottsdale reversed course and demanded that NCI indemnify it for its pro rata share of the cost of defense as a coprimary insurer pursuant to section 11580.9. NCI rejected Scottsdale's demand.

NCI did participate in a mediation in which the wrongful death claims were settled, and it contributed $200,000 of the $675,000 settlement. Scottsdale paid $475,000. As part of the settlement, NCI reserved the right to seek reimbursement for its payment from Scottsdale, and Scottsdale reserved its right to seek contribution from NCI for defense costs and for part of its settlement payment.

Scottsdale asserts causes of action against NCI for declaratory relief regarding both the duty to defend and the duty to indemnify as well as for equitable contribution for defense costs and indemnification. The insurers filed cross-motions for summary judgment. The trial court granted NCI's motion and denied Scottsdale's. Scottsdale appeals.

## DISCUSSION

To minimize insurance coverage litigation when more than one insurance policy provides coverage, the Legislature has created a series of conclusive presumptions.

3

(*Hartford Accident & Indemnity Co. v. Sequoia Ins. Co.* (1989) 211 Cal.App.3d 1285, 1296-1297.) "Section 11580.9 contains a number of subdivisions designed to cover many common coverage dispute situations; each addresses a different set of factual circumstances and identifies which policies will be deemed primary and which policies will be deemed excess." (*Transport Indemnity Co. v. Royal Ins. Co.* (1987) 189 Cal.App.3d 250, 253 (*Transport Indemnity*).) The trial court found that Scottsdale provided primary coverage and NCI provided excess coverage under two subdivisions of section 11580.9–(d) and (h).

Under section 11580.9, a policy that specifically describes a vehicle involved in an accident is primary to a policy that does not describe any vehicle. Subdivision (d) of section 11580.9 (subdivision (d)) provides in relevant part: "[W]here two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess."

The trial court found that subdivision (d) was the more specific subdivision. The court explained: "[I]n this situation, subdivision (d) appears to be the more specific subdivision as it applies where 'two or more policies affording valid and collectible liability insurance *apply to the same motor vehicle or vehicles* in an occurrence out of which a liability loss shall arise, it shall be *conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy shall be excess.*'[emphasis added] (Ins. Code § 11580.9(d).) In the instant case, given that there is no dispute that the subject policies covered both the power unit and the trailer, 'two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles…' (Id.) Further, it is undisputed that *only Scottsdale's policy*

4

*described or rated any vehicle.* Indeed, the Scottsdale policy specifically described and rated the power unit. [Citation.] A vehicle is described or rated when it is 'particularized' in a policy. (*Ohio Casualty Ins. Co. v. Aetna Ins. Co.* (1978) 85 Cal.App.3d 521, 524 . . . .) Given these undisputed facts, Scottsdale's policy is primary under Insurance Code section 11580.9(d) and NCI's is excess."

We agree. The application of subdivision (d) is quite straightforward and determined by an answer to a simple question. "Whether section 11580.9, subdivision (d) applies to an occurrence depends upon the existence of the simply stated condition. Do two or more insurance policies cover the same motor vehicle in 'an occurrence out of which a liability loss shall arise?' If the answer is 'yes,' the statute applies. If the answer is 'no,' the statute does not apply." (*Wilshire Ins. Co., Inc. v. Sentry Select Ins. Co.* (2004) 124 Cal.App.4th 27, 36 (*Wilshire*).) Scottsdale and NCI agreed that both policies applied to the rig. As a consequence, Scottsdale's policy is primary because it describes the 1999 Freightliner tractor/trailer rig**.**

Scottsdale insists that section 11580.9, subdivision (h) (subdivision (h)) was designed to either supersede or trump subdivision (d) in all cases involving a power unit and a trailer. In other words, Scottsdale maintains that subdivision (h), rather than subdivision (d), is the more specific subdivision applicable to the instant facts.

Subdivision (h) states: "Notwithstanding subdivision (b), when two or more policies affording valid and collectible automobile liability insurance apply to a power unit and an attached trailer or trailers in an occurrence out of which a liability loss shall arise, and one policy affords coverage to a named insured in the business of a trucker, defined as any person or organization engaged in the business of transporting property by auto for hire, then the following shall be conclusively presumed: If at the time of loss, the power unit is being operated by any person in the business of a trucker, the insurance afforded by the policy to the person engaged in the business of a trucker shall be primary for both power unit and trailer or trailers, and the insurance afforded by the other policy

5

shall be excess." Because Scottsdale's policy describes the vehicle and NCI's does not, Scottsdale's is primary and NCI's is excess.

Both insurers and the trial court appear to agree that subdivision (h) was added to address a conflict in the decisions whether the insurer of the power unit or the insurer of the trailer was primary when two different policies covered separate parts of the rig. (See, e.g., *Transport Indemnity*, *supra*, 189 Cal.App.3d 250; *Mission Ins. Co. v. Hartford Ins. Co.* (1984) 155 Cal.App.3d 1199, 1212-1213.) Here, however, both policies covered the tractor *and* the trailer. Again the trial court's insightful analysis is instructive: "The Court rejects Scottsdale's argument set forth more fully in its cross motion for summary adjudication that subdivision (d) could not apply. Indeed, its very argument against its application actually supports why it should apply. It argues that virtually every court has held that a tractor-trailer unit is a single 'motor vehicle' for purposes of section 11580.9. [Citation.] It then argues that Courts were split on the interpretation of subdivision (d) as it applied to tractor-trailer units and added subdivision (h) to address trucking accidents. The Court is aware that Scottsdale may be referring to cases such as *Wilshire Ins. Co. v. Sentry Select Ins. Co.* (2004) 124 Cal.App.4th 27, where the court found that two policies were both primary under subdivision (d) where one policy covered a tractor and one covered the trailer. The legislative history of subdivision (h), while not referring to *Wilshire* indicates that this was the situation that subdivision (h) was intended to address. Scottsdale appears to confirm as much as it states that subdivision (h) mandates that in situations where one policy covers the power unit and one covers the trailer, 'that the policy insuring the power unit (tractor) shall be the primary for the loss and the policy insuring the attached trailer or trailers shall be excess.' [Citation.] The Court agrees that this statement is entirely consistent with the legislative intent behind subdivision (h) and avoids the result in Wilshire. However, Scottsdale then leaps to the conclusion that subdivision (h) also applies where there are two policies covering both the tractor and trailer. The legislative intent behind subdivision (h) does not dictate that it applies in

6

these circumstances and the apparent inconsistency sought to be addressed by subdivision (h) is not applicable where both policies cover the tractor-trailer, or the entire motor vehicle. Rather, subdivision (d) appears to be the more appropriate subdivision."

We accept Scottsdale's premise that two insurance policies can be equally ranked or coprimary under section 11580.9. (*Wilshire*, *supra*, 124 Cal.App.4th 27.) And we certainly subscribe to the basic tenets of statutory construction, including our adherence to the plain meaning of the words of the statute and the elementary principle that a court cannot add or subtract words to or from the statute. (*San Francisco Unified School Dist. v. San Francisco Classroom Teachers Assn.* (1990) 222 Cal.App.3d 146, 149; *Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1079.) But we disagree with Scottsdale that we should force application of subdivision (h) to a situation, as here, that was not intended or contemplated by the Legislature rather than to apply subdivision (d), which clearly and unequivocally applies to the facts and establishes the priority of coverage as explained by the trial court at some length. Scottsdale's coverage is primary because Lainez's truck was particularized on the policy, whereas NCI is secondary because his rig was not identified at all on its policy.

But Scottsdale contends that if we apply subdivision (d) to any case involving a tractor/trailer rig we will unravel the resolution of the battle between tractor and trailer insurers and undo all that subdivision (h) was designed to achieve. Not so. Subdivision (h) does solve the battles between insurers of power units and insurers of trailers. And that is precisely what it was intended to accomplish. (*U.S. Fire Ins. Co. v. Williamsburg Nat. Ins. Co.* (E.D.Cal., Nov. 19, 2008, No. 1:07-cv-00718 GSA) 2008 U.S. Dist. Lexis 93991, *22-*24, citing *Progressive Cas. Ins. Co. v. Peerless Ins. Co.* (E.D.Cal., June 7, 2007, No. CV F 06-1113 LJO SMS) 2007 U.S. Dist. LEXIS 44153.) But to conclude, as we do, that subdivision (d) is the specific statute that applies to the facts of our case, even though a tractor/trailer rig is involved, is not to resurrect the old conflicts between insurers of tractors and insurers of trailers.

Scottsdale argues that subdivision (h) renders both insurers primary because both were "engaged in the business of a trucker" when the fatality occurred. Scottsdale accuses the trial court of adding language to the statute by reasoning that the use of the term "operated" in the first clause automatically meant that it applied in the second clause. By adding words to the statute, Scottsdale argues the trial court erroneously interpreted subdivision (h) to render the insurer of the operator of the tractor/trailer primary. But Scottsdale insists subdivision (h) does not state that the policy for the operator is primary; rather, it states that the trucker's policy is primary. And here, Scottsdale concludes, there are two truckers, both of whom should be primary.

But we need not address the nuances and ambiguities of subdivision (h) despite Scottsdale's protestations to the contrary. The language of subdivision (h) does not address a situation where, as here, there are two trucker policies covering both the tractor and the trailer. Rather, the statute differentiates between the operation of the power unit and the operation of the trailer. "If at the time of loss, the power unit is being operated by any person in the business of a trucker, the insurance afforded by the policy to the person engaged in the business of a trucker shall be primary for both power unit and trailer or trailers, and the insurance afforded by the other policy shall be excess." (§ 11580.9, subd. (h).) Simply put, we agree with the trial court that subdivision (h) does not speak to the involvement of two businesses engaged in trucking.

Scottsdale concedes as much but draws a different conclusion. In Scottsdale's view, if the Legislature failed to foresee that two or more insurers might provide truckers' insurance, it is up to the Legislature to amend the statute. Since the statute does not preclude the application of its terms to more than one insurance policy, Scottsdale urges us to apply it to both businesses engaged in the business of a trucker, i.e., to both Scottsdale and NCI.

We disagree where, as here, a second conclusive presumption specifically applies and resolves the coverage dispute. We reject Scottsdale's invitation to apply

8

subdivision (h) to circumstances the statute was not designed to reach simply because a tractor and trailer are involved, when subdivision (d) clearly applies to two insurance policies covering the same motor vehicle–in this case, the tractor/trailer rig. Under these circumstances, it is subdivision (d), not subdivision (h), that is the more specific statute, and subdivision (d)'s conclusive presumption should be applied to resolve the coverage dispute.

NCI catalogues a number of purported undisputed facts to support its claim that it offered only excess coverage. Lainez, the driver, was driving his own truck that he had insured by Scottsdale, operating his own business under his own California authority, and he was operating the power unit "at the time of loss." (§ 11580.9, subd. (h).) Western Transport had required him to purchase his own insurance, and although it secured an additional policy, the policy itself identified the coverage as excess and the cost was rated as an excess policy. NCI notes that Scottsdale accepted the tender and defended the wrongful death actions, and its representative acknowledged that its policy was primary.

Scottsdale maintains that all of these facts are irrelevant and urges us to construe the language of the statute as a matter of law. It does, however, also urge us to take judicial notice of a reply brief NCI filed in another lawsuit in which NCI purportedly took a different position on the meaning of subdivision (h). The request is denied. "The fact a party takes inconsistent legal positions in different actions proves nothing more than that it may have been right–or wrong–in one of them. (See *People* v. *Webb* (1986) 186 Cal.App.3d 401, 413 [230 Cal.Rptr. 755] (conc. opn. of Sims, J.)" (*People ex rel. Dept. of Fish & Game v. Attransco, Inc.* (1996) 50 Cal.App.4th 1926, 1929-1930, fn. 5.) We agree, however, that we need not consider the equities between the insurers or interject a panoply of facts into a solely legal analysis of the applicability of the two subdivisions of section 11580.9.

Thus we conclude that subdivision (d) specifically applies where, as here, there are two policies "affording valid and collectible liability insurance . . . to the same motor

9

vehicle or vehicles in an occurrence out of which a liability loss [arose]." (§ 11580.9, subd. (d).) Although the conclusive presumption set forth in subdivision (h) was intended to resolve the coverage disputes between insurers of power units and insurers of trailers, there is nothing in the statute or the legislative history to suggest it applies when two trucker's policies provide coverage to the entire rig. As a result, subdivision (d) is the more specific subdivision that applies and thereby renders the Scottsdale policy primary and the NCI policy excess.

## DISPOSITION

The judgment is affirmed.


           RAYE         , P. J.


We concur:


       BLEASE      , J.


       HOCH       , J.

Filed 9/17/14

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SCOTTSDALE INDEMNITY COMPANY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>NATIONAL CONTINENTAL INSURANCE COMPANY,<br><br>    Defendant and Respondent. | C071416<br><br>(Super. Ct. No. 34201000083168CUICGDS)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, J.  Affirmed.

Selman Breitman, Alan B. Yuter, and Rachel E. Hobbs for Plaintiff and Appellant.

Yocis & Cox and Stephen M. Smith for Defendant and Respondent.

THE COURT:

The opinion in the above-entitled matter filed on August 20, 2014, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:

<u>          RAYE          </u>, P. J.

<u>          BLEASE          </u>, J.

<u>          HOCH          </u>, J.


1