NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 8 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HALLMARK SPECIALTY INSURANCE COMPANY, an Oklahoma corporation, | No. 20-17314 |
| Plaintiff-Appellant, | D.C. No. 4:20-cv-02046-HSG |
| v. | MEMORANDUM[*] |
| THE CONTINENTAL INSURANCE COMPANY, a Pennsylvania corporation; NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, an Illinois corporation, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Argued and Submitted January 14, 2022
Pasadena, California

Before: WALLACE and FRIEDLAND, Circuit Judges, and LASNIK,[**] District Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

Hallmark Specialty Insurance Company ("Hallmark") appeals from the dismissal of its indemnification/equitable subrogation and unjust enrichment claims against The Continental Insurance Company and National Fire Insurance Company of Hartford (collectively, "National"). Hallmark argues that the district court erred in interpreting and applying California Insurance Code section 11580.9(h). We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

California Insurance Code section 11580.9 was enacted "to minimize or eliminate litigation over competing provisions of 'other insurance' clauses in multiple policies." *Wilshire Ins. Co. v. Sentry Select Ins. Co.*, 21 Cal. Rptr. 3d 60, 65 (Ct. App. 2004); *see also* Cal. Ins. Code § 11580.8. The section "contains a number of subdivisions designed to cover many common coverage dispute situations; each addresses a different set of factual circumstances and identifies which policies will be deemed primary and which policies will be deemed excess." *Transp. Indem. Co. v. Royal Ins. Co.*, 234 Cal. Rptr. 516, 517 (Ct. App. 1987). Subsection (h) was added in 2006 to address what happens when a tractor and a trailer are insured by different companies:

> (h) Notwithstanding subdivision (b), when two or more policies affording valid and collectible automobile liability insurance apply to a power unit and an attached trailer or trailers in an occurrence out of which a liability loss shall arise, and one policy affords coverage to a named insured in the business of a trucker, defined as any person or organization engaged in the business of transporting property by auto for hire, then the following shall be conclusively presumed: If at the time of loss, the power unit is being operated by any person in the

2

business of a trucker, the insurance afforded by the policy to the person engaged in the business of a trucker shall be primary for both power unit and trailer or trailers, and the insurance afforded by the other policy shall be excess.

Ins. § 11580.9(h). The interpretation and application of this subsection are at issue here.

In May 2018, an accident occurred involving a tractor/power unit insured by Northland Insurance Company ("Northland") and Hallmark. Northland's policy was primary and Hallmark's was excess.[1] The trailer was covered by a primary policy issued by National.

Northland defended the lawsuit that was brought against the owner of the tractor/power unit. In order to settle the litigation, Northland and Hallmark paid their policy limits ($1,000,000 and $4,000,000 respectively), but not before Hallmark made a demand on National for contribution to the settlement. National declined, and Hallmark filed a complaint seeking National's policy limits of $1,000,000 under theories of indemnification/equitable subrogation and unjust enrichment. The district court granted National's motion to dismiss, holding that section 11580.9(h) made the policy on the trailer excess over both policies covering the tractor/power unit.

---

[1] Hallmark's policy provided $4,000,000 in coverage for injury or damage that was otherwise covered by the Northland policy but exceeded the $1,000,000 limit on that policy.

Hallmark argues on appeal that the district court erred because section 11580.9(h) applies only to disputes between primary insurers, not to disputes between primary and excess insurers. Under California law, the goal of statutory interpretation "is to determine the Legislature's intent so as to effectuate the law's purpose." *Sierra Club v. Superior Ct.*, 302 P.3d 1026, 1031 (Cal. 2013) (quotation marks omitted). To do so, "[w]e first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment." *Id.* (quotation marks omitted). There is nothing in the declaration of legislative purpose or the text of subsection (h) that forbids its application to excess policies. Rather, the statute broadly seeks to ameliorate "possible conflicts and litigation, with resulting court congestion, between and among injured parties, insureds, and insurers concerning which, among various policies of liability insurance and the various coverages therein, are responsible as primary, excess, or sole coverage." Ins. § 11580.8. Section 11580.9(h) does not limit the number or the type of policies to which it applies, instead using the more general phrase "two *or more* policies affording *valid and collectible* automobile liability insurance . . . to a power unit and an attached trailer or trailers." (emphasis added).

Hallmark argues that the reference to "valid and collectible" insurance in the second clause of subsection (h) shows that the legislature intended the subsection to apply only to primary policies because excess policies are generally not "collectible" at the time of the liability-generating accident. Hallmark's premise—that primary and excess policies often become "collectible" at different times—is correct. A primary insurance policy is immediately "collectible" as long as the insurer is solvent. *Hellman v. Great Am. Ins. Co.*, 136 Cal. Rptr. 24, 27 (Ct. App. 1977). An excess insurance policy, on the other hand, becomes collectible only after the underlying coverage has been exhausted. *Id.* at 27-28 (citing *Schweisthal v. Standard Mut. Ins. Co.*, 198 N.E.2d 860, 862 (Ill. App. Ct. 1964)). Thus, at the time of the accident, only the Northland and National policies were "collectible." Hallmark does not explain, however, why this premise leads to the conclusion that excess policies are outside the reach of section 11580.9(h).

Hallmark's theory seems to be that, once section 11580.9(h) is applied to identify a primary policy at the time of the occurrence, the statute drops out of the analysis, leaving courts to interpret, reconcile, and apply the declarations and "other insurance" provisions of any remaining policies in order to determine which policy or policies pay out next. There is no legislative history, statutory language, or policy justification, however, that supports the incorporation of a temporal or "single use" limitation into the phrase "valid and collectible." Instead, in keeping

with the declared legislative purpose of the statute, section 11580.9(h) has applicability whenever a priority determination has to be made between two "collectible" policies, regardless whether the policies would have been primary, excess, or umbrella in the absence of section 11580.9(h).

In this case, the parties agree that, at the time of the accident, both the Northland and the National policies afforded coverage and were "collectible." The parties also agree that, because the Northland policy covered an insured in the business of a trucker, application of section 11580.9(h) gave rise to a conclusive presumption that the Northland policy was primary, with the National policy deemed excess. Once the underlying insurance offered by the Northland policy was exhausted, the Hallmark policy was triggered (*i.e.*, it also became "collectible"). At that point, there were again two policies "affording valid and collectible automobile liability insurance . . . to a power unit and an attached trailer . . . ." Applying section 11580.9(h) a second time gives rise to a conclusive presumption that Hallmark's policy, which is the one offering coverage to an insured in the business of a trucker, is primary for both the tractor/power unit and the trailer.[2]

---

[2] Because the initial application of section 11580.9(h) made the National policy "excess," both it and the Hallmark policy were at the same level of coverage. Hallmark's reliance on *Dart Indus., Inc. v. Com. Union Ins. Co.*, 52 P.3d 79, 92 n.6 (Cal. 2002), is therefore misplaced.

This interpretation of section 11580.9(h) is fully consistent with the statutory language, giving effect to the "valid and collectible" requirement without adding an unsupported "primary" or "single use" limitation. In addition, this interpretation furthers the statutory goal of avoiding disputes and litigation regarding coverage determinations, and it implements the legislature's prioritization of policies that afford coverage to a person or entity in the business of a trucker over other applicable policies.[3]

---

[3] Hallmark's reliance on *Continental Ins. Co. v. Lexington Ins. Co.*, 64 Cal. Rptr. 2d 116 (Ct. App. 1997), is unavailing. The *Lexington* court was asked to apply section 11580.9(d) in an indemnity/contribution action between the insurer of a trailer and the issuer of an umbrella policy that would cover the tractor/power unit if and when the underlying policy were exhausted. Subsection (h) had not yet been enacted, and section 11580.9(d) made "the policy in which the motor vehicle is described and rated as an owned automobile" primary. The court held that neither the umbrella policy nor the trailer policy "describe[d] or rate[d] as an owned automobile the motor vehicle involved in the underlying accident." 64 Cal. Rptr. 2d at 119. It therefore concluded that subsection (d) did not apply. *Id.* Thus, section 11580.9 was deemed inapplicable not, as Hallmark would have it, because the Lexington policy was excess but rather because the relevant policies did not meet the statutory criteria. Because section 11580.9 did not apply, there was no conclusive presumption which policy or policies were primary, and the court accordingly had to analyze the object and purpose of excess policies, the limits of liability set forth in the declarations pages, and the interplay of the competing "other insurance" provisions in order to determine the order of coverage. The case does not support Hallmark's contention that section 11580.9 does not apply to excess policies.

AFFIRMED.[4]

---

[4] Because the district court's priority-of-coverage determination was correct, we need not address National's alternative argument that settlement payments are not recoverable "damages" under National's policy and California law.